Lorraine KING, Appellant,

v.

Kendra K. ACKER & Kimberly Jackson, Appellees.

No. 01–86–0227–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 22, 1987.

William H. Scott, Jr., Houston, for appellant.

William E. Wylie, William E. Wylie, P.C., Tyler, for appellees.

Before SAM BASS, COHEN and DUNN, JJ.

## OPINION

SAM BASS, Justice.

This is an appeal from a jury trial that found the appellant maliciously conspired to tortiously interfere with the inheritance of appellees. Damages awarded were $28,-275.00 actual and $76,096.82 exemplary.

We reform and affirm.

Fred T. King, Jr. ("King") had two children, appellees Dahse and Jackson, born to his first wife, Louise King. Appellant, Lorraine King, later married King. King and Lorraine had separated many times and had filed for divorce on one occasion.

In January 1982, King was admitted to a hospital with a severe headache. Dr. Posey saw King on January 4, 1982. King was stable, mentally alert, and had full comprehension. On January 5, 1982, King had surgery for an aneurysm near his brain. Six days later, he became lethargic. On January 13, 1982, some neurological signs showed some deterioration of his

brain. King lapsed into a coma and passed away on February 4, 1982.

On January 18, 1982, while King was in a coma, Mercurio, appellant's attorney, and appellant attempted to assign 500 shares of Petro-Chem Technical Services stock from King to appellant, using a power of attorney purportedly signed by King on January 4, 1982. Later, this stock was redeemed for $400,000 by a temporary administrator of the estate. The power of attorney was found by the jury *not* to have been signed by King.

In February 1982, Mercurio, attorney for appellant at that time, filed a purported will of King dated January 4, 1982, for probate. Previously, Brad Wright was appointed temporary administrator of King's estate pending a will contest. This will of January 4, 1982, was found by the jury *not* to have been signed by King. Based upon the jury's findings, a final judgment was entered admitting King's will dated June 13, 1977, to probate and appointed appellees as co-independent administratrices.

Lucille Lacy, a documents examiner, was paid $8,275 in connection with examining the 1982 will.

William E. Wylie, a board certified attorney in estate planning and probate law, was paid $76,096.82 in legal fees and expenses.

Appellees, Dahse, Jackson, and Aline L. King, King's mother, brought suit against appellant, Mercurio, Nancy Miller and Frank L. Saye, who witnessed the 1982 will. The cause of action against Mercurio, Miller, and Saye was severed.

Appellees' suit complained that if the 1982 will and the power of attorney had not been forged and filed for probate, there would have been no reason to have a temporary administrator appointed and the $20,000 statutory commission for the sale of the stock by the temporary administrator would not have been paid.

The findings of the jury were that:

1. King did not sign the power of attorney;

2. Appellant tortiously interfered with the inheritance of appellees with malice;

3. Appellees suffered actual damages in the amount of $28,275;

4. Appellant conspired to tortiously interfere with appellees' inheritance; and

5. Exemplary damages in the amount of $76,096.82 were awarded against appellant.

The court entered judgment for $104,371.82 plus interest of 10% per annum.

Appellant appeals upon 23 points of error, 12 of which rely upon no evidence, insufficiency of evidence, or against the great weight of the evidence.

In deciding "insufficiency of evidence" points of error, this Court is required to look at all of the evidence but may find error only if the evidence supporting the contested finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Dixon v. Van Waters & Rogers*, 674 S.W.2d 479 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.).

In deciding "no evidence" points of error, this Court will consider only that evidence and inferences from the evidence that tend to support the jury's findings, and will disregard all evidence and inferences to the contrary. *Shell Oil Co. v. Waxler*, 652 S.W.2d 454 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). A "no evidence" point is properly sustained only if there is a complete absence of evidence, or no more than a scintilla of evidence to support the contested finding. *Tower View, Inc. v. Hopkins*, 679 S.W.2d 632 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

Appellant complains in points of error 1, 2, and 3, that there is no evidence, insufficient evidence, and that the evidence is so contrary to the overwhelming weight and preponderance of the evidence that it will not support the answer to issue 2, which found that appellant had tortiously interfered with the inheritance of appellees to receive property under the 1977 will.

Appellant testified that King called Mercurio to write the 1982 will and the power of attorney; however, the record reveals conflicting testimony from Mercurio and Miller, his secretary, concerning the time

she was called to type the power of attorney. The testimony shows that appellant used the 1982 power of attorney to enter a safe deposit box to look for the 1982 will. Appellant, under the alleged authority granted by the power of attorney, signed deceased's name to assign 500 shares of stock of Petro-Chem Technical Services to herself while the deceased was in a coma.

■ Because the jury found that King did not sign the power of attorney, there is sufficient evidence to support the jury's findings that appellant tortiously interfered with the inheritance of appellees to receive property under the 1977 will.

Appellant's first three points of error are overruled.

■ In points of error 5, 6, and 7, appellant contends that there is no evidence, insufficient evidence, and that the evidence is so contrary to the overwhelming weight and preponderance of the evidence that it will not support issue 4, which found that appellant acted with malice in tortiously interfering with appellees.

The jury obviously did not believe appellant's proffered testimony that King had executed the power of attorney. Thus, the evidence is sufficient to support the finding of issue 4, that appellant acted with ill will, spite, and evil motive in transferring the stock and causing injury by tortiously interfering with appellees.

Appellant's points of error 5, 6, and 7 are overruled.

■ In points of error 9, 10, and 11, appellant contends that there is no evidence, insufficient evidence, and that the evidence is so contrary to the overwhelming weight and preponderance of the evidence to support issue 5, which found that appellant conspired with one or more persons to tortiously interfere with the inheritance of appellees.

Mercurio testified that he was present when the 1982 will and the power of attorney were executed, and that he, with the power of attorney, began the process to transfer the 500 shares of Petro-Chem Technical Services stock to appellant. Miller and Saye testified that they observed the execution of the 1982 will. Miller stated that she typed the 1982 will and power of attorney.

The record is full of inconsistencies between the testimony of appellant and that of the other alleged conspirators' testimony. A significant conflict exists in their answers to what, if anything, Mercurio said after the signing of the 1982 will. Miller testified at trial that Mercurio read the self-proving affidavit; however, in her previous deposition, she answered that Mercurio said nothing. Saye testified that Mercurio did not ask him any questions after he signed the 1982 will.

Because of the conflicts and inconsistencies in the testimony of the witnesses to the preparation and execution of the 1982 will, the evidence is sufficient to support issue 5, that appellant and one or more persons conspired to tortiously interfere with appellees' inheritance. It was the prerogative of the jury to accept or reject the testimony. *See Royal v. Cameron*, 382 S.W.2d 335, 339 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.).

Appellant's points of error 9, 10, and 11 are overruled.

In point of error 4, appellant contends that the answer to issue 2, which found that appellant did tortiously interfere with the inheritance of appellees, is not supported by sufficient pleadings upon which a recovery may be had.

Paragraphs I and III of plaintiff's second amended original petition sought recovery for damages from appellant for her tortious conduct and fraud in submitting the 1982 will and in using the power of attorney to transfer 500 shares of stock to herself. Appellees claimed recovery from appellant and her co-conspirators for: their tortious and fraudulent conduct; malicious action toward appellees; the 1982 forged will and power of attorney; and those documents' use. All of these acts caused damage to appellees for which they are entitled to seek compensation. Appellees also prayed for exemplary damages based on appellant's conduct.

Although Texas has never addressed this exact issue, such a cause of action for damages lies in other states for interference where there is an expected inheritance. Annot., 22 A.L.R. 4th 1234, § 3 (1983). The Supreme Judicial Court in Maine, for example, held that a person's opportunity to receive a benefit as a prospective legatee will be protected from tortious interference and that such a cause of action may be maintained even before the testator's death. *Harmon v. Harmon*, 404 A.2d 1020 (Me.1979).

Courts in other jurisdictions have held that a cause of action exists where the actor interfered with the inheritance by independent tortious conduct. *McGregor v. McGregor*, 101 F.Supp. 848 (D.Colo. 1951), *aff'd*, 201 F.2d 528 (Cir.1953); *Allen v. Leybourne*, 190 So.2d 825 (Fla.1966).

The *Restatement (Second) of Torts*, sec. 774B (1977) provides:

> One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.

The commentary to this section provides in part:

> Thus the rule stated here applies when a testator has been induced by tortious means to make his first will or not to make it; and it applies also when he has been induced to change or remake it. It applies also when a *will is forged*, altered or suppressed. [Emphasis added.]

The *Restatement (Second) of Torts*, sec. 774A (1977), provides that one who is liable to another for tortious interference with a contract or a prospective contractual relation is liable for:

> (a) *the pecuniary loss of the benefit* of the contract of the prospective relation;
> (b) *consequential losses* for which the interference is the legal cause; and
> (c) *emotional distress* or actual harm to reputation, if they are reasonably to be expected to result from the interference.

The commentary further provides for recovery of punitive damages as well.

It is well understood that the law affords a remedy for every invasion of a legal right. Under the maxim "where there is a right, there is a remedy," equity will not suffer a right to be without a remedy. *Chandler v. Welborn*, 156 Tex. 312, 319, 294 S.W.2d 801, 807 (1956).

It is well settled in Texas that "[a]ny intentional invasion of, or interference with, property, property rights, personal rights or personal liberties causing injury without just cause or excuse is an actionable tort." *Cooper v. Steen*, 318 S.W.2d 750, 757 (Tex.Civ.App.—Dallas 1958, no writ) (citing 86 C.J.S. *Torts*, § 40).

Texas seems to recognize a cause of action for tortious interference. *See Tippett v. Hart*, 497 S.W.2d 606 (Tex.Civ.App. —Amarillo 1973, writ ref'd n.r.e.); *Cooper*, 318 S.W.2d 750. Appellant's counsel, in oral argument, conceded that prior Texas cases imply that Texas does recognize a tortious interferance with inheritance rights. *See Pope v. Garrett*, 204 S.W.2d 867, 871 (Tex.Civ.App.—Galveston 1947), *rev'd on other grounds*, 211 S.W.2d 559 (Tex.1948). We hold that a cause of action for tortious interference with inheritance rights exists in Texas.

Appellant's fourth point of error is overruled.

In points of error 13, 14, and 15, appellant contends that there is no evidence, insufficient evidence, and that the evidence is so contrary to the overwhelming weight and preponderance of the evidence to support issue 3, which found that actual damages were sustained by appellees in the amount of $28,275.

The record shows that Lacy and Green each received $8,275 and $1,250, respectively, as handwriting experts. Also, supporting the actual damage award is the $20,000 commission (i.e. 5% of $400,000) received by the temporary administrator from the redemption of 500 shares of Petro-Chem Technical Services stock, which the appellant received by the use of the forged power of attorney.

■ We hold that the trial court properly permitted the jury to consider the $20,000 commission in computing appellees' actual damages. This expense would not have been incurred but for appellant's malicious and tortious interference.

■ The appellees, however, cannot recover the cost of the handwriting experts. These are litigation expenses and are not recoverable. *See City of Houston v. Biggers*, 380 S.W.2d 700 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.).

Appellant's points of error 13, 14, and 15 are overruled as to the $20,000 commission paid, but are sustained as to the $8,275 paid for the handwriting experts.

In point of error 8, the appellant complains that issue 4, which found that appellant acted with malice in tortiously interfering with appellees, is not supported by sufficient pleadings upon which a recovery may be had.

Appellees, in paragraph IV of their second amended original petition, pled that the conduct of appellant and her alleged co-conspirators was "willfully, intentionally, unlawfully and maliciously done...." and that as a result of such pleadings, the appellees were entitled to exemplary damages. *See Tippett v. Hart* 497 S.W.2d 606, 611–612 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.).

■ On a showing in a tort action that a defendant acted willfully, maliciously, fraudulently, or with gross negligence, there may be a recovery of exemplary damages, in addition to compensatory damages. *National Bank of Commerce v. May*, 583 S.W.2d 685, 691 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.); *see also* 28 Tex. Jur.3d *Damages* § 172 (1983).

Appellant's eighth point of error is overruled.

In point of error 12, appellant claims that issue 5, which found that appellant conspired with one or more persons to tortiously interfere with the inheritance of appellees, is not supported by sufficient pleadings upon which a recovery could be had.

■ A civil conspiracy is a separate actionable tort and has been defined by the Texas Supreme Court "as a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968). The gist of a civil conspiracy is the wrong that injures another, and not the conspiracy itself. *Id.* Proof of the conspiracy can be made by circumstantial evidence. *Id.* at 858; *see also Carr v. Hunt*, 651 S.W.2d 875 (Tex.Civ.App.—Dallas 1983, writ ref'd n.r.e.).

The pleadings in paragraph IX through XVI in appellees' second amended original petition, which alleged civil conspiracy, tortious interference, and damages, was legally sufficient to support issue 5. Appellant's twelfth point of error is overruled.

In point of error 16, appellant claims that issue 3, which found that actual damages were sustained by appellees in the amount of $28,275, is not supported by sufficient pleadings upon which recovery may be had.

Paragraphs XIV, XV, and XVI of appellees' second amended original petition sought recovery for the actual damages resulting from the costs incurred in the payment of a temporary administrator's commission, which would not have been required to be paid except for the tortious conduct of appellant and her co-conspirators. Paragraph XIV sues for attorney's fees and costs as a result of the forged will and forged power of attorney. Paragraph XV sues for administrator's fees as a result of the forged will and forged power of attorney. Paragraph XVI sues for loss income from the shares of the Petro-Chem Technical Services, and stock as a result of the forged will and forged power of attorney. There are sufficient pleadings upon which recovery was made.

Appellant's sixteenth point of error is overruled.

In points of error 17 and 18, appellants contend that the court committed a material error in instructing the jury regarding issue 3. They allege that the jury was erroneously permitted to consider the cost

of appointing the temporary administrator and the expert's testimony when these damages should be considered only for a willful tort. Additionally, in point of error 19, the appellant contends that the court committed a material error in instructing the jury regarding issue 3 that they could consider consequential loss, alleging that the proof is absolutely void of any consequential loss by plaintiffs, and inclusion of any such portion in the instruction represents a comment by the trial court on the weight of the evidence.

The testimony of Wright, the temporary administrator, was that he received a commission equal to five percent of the $400,000 redemption price paid for the Petro-Chem Technical Services stock, because the stock had been taken from the bank with the forged power of attorney by the appellant or her attorney. Thus, but for the tortious acts of appellant in the forged 1982 will and the forged power of attorney, no such commission would have been paid to a temporary administrator, and the deceased's estate would not have been depleted by the $20,000 commission.

 The appellant is liable for both the actual and exemplary damages for the consequential losses for which her tortious interference caused. *Restatement (Second) of Torts* § 774A (1977). It is the purpose of the law, in awarding compensatory (i.e. actual) damages, to repair the wrong that has been done. 28 Tex.Jr.3d *Damages* § 6 (1983). Each suit for damages should be determined on its own facts and a reasonable measure of recovery applied as the facts dictate.

The commission paid to the temporary administrator in this case is analogous to the expenses paid a receiver. In Texas, the expenses of a receivership must come from the party whose wrongful act brought about the appointment of the receiver. *Theatres of America, Inc. v. State*, 577 S.W.2d 542 (Tex.Civ.App.—Tyler 1979, no writ). The $20,000 commission was directly caused by the unneeded appointment of the temporary administrator and was a part of the consequential damages resulting from the tortious conduct of appellant.

Thus, the trial court correctly instructed the jury, in connection with issue 3, that in determining actual damages, the jury could consider consequential damages, including the cost of appointing a temporary administrator for the purpose of redeeming the illegal transfer of the 500 shares of stock.

The trial court was incorrect, however, in instructing the jury that the cost of obtaining expert testimony, regarding the genuineness of the deceased's signature, could be considered. However, this error is not fatal in view of our holding upon points of error 13, 14, and 15, and that the appellant has not been prejudiced by the instruction. Appellant's points of error 17, 18, and 19 are overruled.

In point of error 20, appellant complains that the trial court committed a material error in instructing the jury to answer issue 6, regarding exemplary damages, because there were no pleadings or proof of any legal damages, which is necessary for an award of punitive damages.

 Paragraph XVII of appellees' second amended original petition alleged that appellant's tortious conduct was "willfully, unlawfully and maliciously done," and the elements necessary to support the award by the jury of exemplary damages were pled. Actual damages were proved, as discussed above. The record reflects that the forged will and forged power of attorney required the appellees to pay out a large sum of money for administrator's fees and attorney's fees.

Appellant's twentieth point of error is overruled.

In point of error 21, the appellant claims that the trial court erred in entering judgment on issue 6 for punitive damages in the sum of $76,096.82, because there was no pleading or proof as to actual damages.

 As previously discussed, there is sufficient evidence in the record to support the actual damage award of $20,000. The pleadings, as previously discussed and set forth, was sufficient upon each element of this cause of action. As set forth in point of error 22 below, there was proof of the

payment of attorney's fees, which may be considered in awarding exemplary damages. Thus, the $76,096.82 in exemplary damages, which was the exact amount of the attorney's fees incurred by appellees, is upheld.

Appellant's point of error 21 is overruled.

Appellant's twenty-second point of error contends that the trial court committed a material error in instructing the jury that they might find, in determining punitive damages, that exemplary damages may include reasonable compensation for inconvenience and expense, such as attorney's fees, because attorney's fees are not a proper element of actual or exemplary damages.

■ Although attorney's fees ordinarily do not constitute an element of actual damages (and were not so considered in this case), the jury may consider such fees in fixing the amount of exemplary damages. *Hofer v. Lavender,* 679 S.W.2d 470 (Tex. 1984); *Pan American Petroleum Corp. v. Hardy,* 370 S.W.2d 904 (Tex.Civ.App.— Waco 1963, writ ref'd n.r.e.); *Allison v. Simmons,* 306 S.W.2d 206 (Tex.Civ.App.— Waco 1957, writ ref'd n.r.e.); *see also* 28 Tex.Jur.3d *Damages* § 181. The *Hofer* court cited *Allison,* 306 S.W.2d 206, for the proposition "that exemplary damages [exist] as an example for the good of the public and to compensate for inconvenience and attorney's fees." 679 S.W.2d at 474.

Thus, the trial court correctly instructed the jury, regarding issue 6, that exemplary damages may include reasonable compensation for inconvenience and expenses, such as attorney's fees.

Appellant's twenty-second point of error is overruled.

In appellant's last point of error, she contends that Probate Court No. 3 of Harris County was without jurisdiction to hear and determine this cause.

■ In 1985, Section 5A(b) of the Texas Probate Code was amended by adding the following as the last sentence thereof:

In actions by or against a personal representative, the statutory probate courts have concurrent jurisdiction with the district courts. Acts 1985, 69th Leg., p. 6429, ch. 875 § 1, eff. Aug. 25, 1985. [Emphasis added.]

The legislature stated that the Act would apply *"to all cases filed under Section 5A(b), Texas Probate Code, on or after January 1, 1973."* [Emphasis added.] Acts 1985, ch. 875, § 2, 1985 Tex.Gen. Laws, 6429. The 1985 amendment to Section 5A(b) of the Texas Probate Code allows the probate court to have concurrent jurisdiction, if it did not previously have exclusive jurisdiction. Therefore, since this cause of action was brought by the personal representatives of the deceased's estate, jurisdiction was proper. *First State Bank v. Bishop,* 685 S.W.2d 732 (Tex.App.— Houston [1st Dist.] 1985, no writ).

Appellant's last point of error is overruled.

The judgment is reformed by reducing the actual damage award to $20,000. In all other respects, the judgment is affirmed.