Ann **RICHARDS**, Governor of Texas, Robert I. Kelly and Debbie Irvine, Appellants,

v.

Guadalupe **MENA**, Maria Gomez, Zulema Hernandez, Juan Angel Garcia, Chayo Flores Zaldivar, Robert R. Alonzo, Patricia Roybal Sutton, José R. Kennard, El Paso Coalition for Fair Redistricting, Augustin Negrete, Benjamin Menchaca, Richard Arriola, Saul Gonzalez, Marc Campos, Leonardo Camarillo, Lalo Arcuate, Beto Salinas, Ramiro Cavazos, and Edgar Ruiz, Appellees.

No. 13–92–100 CV.

Court of Appeals of Texas, Corpus Christi.

May 11, 1995.

Rehearing Overruled Sept. 28, 1995.

---

1. Mr. Hilliard's term.

See also 820 S.W.2d 371 and 848 S.W.2d 819.

Renea Hicks, Special Assistant Attorney General, Austin, Javier Guajardo, Special Assistant Attorney General, Austin, Dan Morales, Attorney General, Austin, Will Pryor, First Assistant Attorney General, Austin, Mary F. Keller, Deputy Assistant Attorney General, Austin, for appellants.

Alejandro Moreno, Jr., Edinburg, Travis Hiester, Atlas & Hall, McAllen, James C. Harrington, Austin, Judith Bagley, Austin, Judith Sanders–Castro, San Antonio, Jose Garza, San Antonio, for appellees.

Before McCLOUD, C.J., and BURGESS and ANDELL, JJ.[1]

## OPINION

BURGESS, Justice.

This appeal involves the propriety of attorneys' fees in a redistricting and voting rights case. In a non-jury trial the court permanently enjoined use of the 1991 legislative enactments redistricting the Texas House of Representatives and the Texas Senate. An agreed judgment settled all issues except appellees' attorney fees. By sixteen points of error, the State contends the trial court erred by awarding attorney fees against the State.

Originally, appellees, the Mexican American Legal Defense and Educational Fund (MALDEF), the Texas Civil Rights Project (TCRP), and the Texas Rural Legal Aid Fund (TRLA), on behalf of thirteen Mexican–Americans and the El Paso Coalition for Fair Redistricting, a voting rights community organization, sued to prevent Texas officials

---

1. Assigned pursuant to TEX.GOV'T CODE ANN. §§ 74.003(a), (b) & 75.002(a)(1) (Vernon 1988 & Supp.1995).

from using 1990 census figures for legislative redistricting purposes. Appellees claimed violations of the Texas Constitution's Bill of Rights and other statutory provisions.

The Legislature passed HB–150 and SB–31, Texas House of Representatives and Senate redistricting plans. Appellees then amended their lawsuit claiming the newly enacted legislation illegally and unconstitutionally discriminated against Mexican–Americans.

After a hearing, the trial court entered a temporary injunction, partial summary judgment, and declaratory relief invalidating the House and Senate plans and ordering the State to develop new redistricting plans, adjusting for the census undercount.

Because of the impending March 1992 primaries, a second suit, *Quiroz v. Richards*, was filed complaining about the Senate redistricting plan. An agreed final judgment was entered enjoining implementation of SB–31 and replacing it with the *Quiroz* plan, which provided a different method of redistricting. The same *Quiroz* plan was entered and adopted in this case. Entering the *Quiroz* plan was only a partial settlement of this case because the House reapportionment plan remained in dispute. Later, in this case, the trial judge signed an agreed final judgment enjoining the appellants from implementing HB–150 and ordering House elections under a different plan.

The Legislature, on January 8, 1992, in special session, passed SB–1 and HB–1, Senate and House redistricting plans identical to those approved in *Quiroz* and by the trial judge in this case.

The State, through its various points of error, actually raises only two issues; the legal availability of attorneys' fees for the plaintiffs and the evidentiary basis for the award.

■ The first issue is determined by an interpretation of the scope of the waiver of governmental immunity under Texas Civil Practice and Remedies Code, chapter 106. The State contends the trial court erred because chapter 106 does not waive governmental immunity for the payment of attorney fees.

An officer or employee of the state or a political subdivision of the state who is acting or purporting to act in an official capacity may not, because of a person's race, religion, color, sex, or national origin, impose an unreasonable burden on the person. TEX.CIV. PRAC. & REM.CODE ANN. § 106.001(a)(6) (Vernon 1986). If a person has violated or there are reasonable grounds to believe a person is about to violate section 106.001, the person aggrieved by the violation or threatened violation may sue for preventive relief, including a permanent or temporary injunction. TEX. CIV.PRAC. & REM.CODE ANN. § 106.002(a) (Vernon 1986). Additionally, the court may award the prevailing party, other than the state, reasonable attorneys' fees as part of the costs. TEX.CIV.PRAC. & REM.CODE ANN. § 106.002(b) (Vernon 1986). Thus, section 106.002(b) provides for an express waiver of the State's governmental immunity to those prohibited acts listed in section 106.001.

Initially, we note the State does not challenge the trial court's finding that the House and Senate bills imposed an unreasonable burden upon appellees. The State argues chapter 106 is not an all-purpose antidiscrimination statute, thus no waiver of governmental immunity for attorney fees and costs in a redistricting cause of action. The State argues that any unintentional racially discriminatory impact of the redistricting legislation is not the type of discriminatory act addressed in section 106.001(a)(6) whereby sovereign immunity is waived in 106.002(b). Without citing authority, the State contends the prohibited acts referred to in section 106.001(a)(6) are only intentional acts, not, as in this case, the unintentional racially discriminatory impact of the Legislature's redistricting legislation.

Appellees respond that the use of HB–150 and SB–31 are within the prohibited acts contemplated by 106.001(a)(6). Appellees contend that because they pleaded and the trial court held the use of HB–150 and SB–31 redistricting plans and their underlying census data imposed an unreasonable burden on the rights of Mexican–American voters because of their race, color, or national origin, chapter 106 applies. They assert, therefore,

the trial court acted within its discretion when awarding their attorney's fees.

When interpreting statutes we are bound by three principles. The State is immune from liability for attorney's fees except when that immunity is waived by clear statutory language. *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976); *Texas Dept. of Human Services v. Methodist Retirement Services, Inc.*, 763 S.W.2d 613, 614 (Tex. App.—Austin 1989, no writ). Statutes must be interpreted so as to give effect to legislative intent. *Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382, 384 (Tex.1982). A statute must be read as a whole and interpreted to give effect to every part. *Ex parte Pruitt*, 551 S.W.2d 706, 709 (Tex.1977).

The State contends section 106.001 refers primarily to acts of discrimination by the government in employment situations. However, the Austin court of appeals addressed a summary judgment case involving an alleged prohibited act under 106.001(a)(6) which was not related to an employment issue. *See Toungate v. Bastrop Indep. School Dist.*, 842 S.W.2d 823 (Tex.App.—Austin 1992, no writ). The *Toungate* plaintiff complained about the school district's assessment of in-school suspension for violating the district's hair length policy. The *Toungate* court reversed the summary judgment concluding that an issue of fact existed about whether the school district's acts placed an unreasonable burden upon the plaintiff.

The Legislature enacted article 6252–16, the predecessor to chapter 106 of the Civil Practice and Remedies Code, in 1967. In related provisions article 6252–16 read as follows:

Section 1. (a) No officer or employee of the state or of a political subdivision of the state, when acting or purporting to act in his official capacity, may:

(1) refuse to employ a person ...;

(2) discharge a person from employment ...;

. . . .

(5) refuse to permit a person to use facilities open to the public and owned, operated, or managed by or on behalf of

the state or a political subdivision of the state, ... [or];

. . . .

(7) refuse to grant a benefit to, or impose an unreasonable burden upon, a person, because of the person's race, religion, color or national origin; ....

Former art. 6252–16, § 1(a)(1),(2),(5) & (7) (Vernon 1970). *See* Acts 1967, 60th Leg., R.S., ch. 72, 1967 Tex.Gen.Laws 138.

Former article 6252–16 also provided as a remedy preventive relief specifically including injunctive relief. Former article 6252–16 § 2 (Vernon 1970). Additionally, section two provided that the court, in its discretion, may award the aggrieved party costs and a reasonable attorney fee as part of the costs from the state. *Id.* In 1971, the Legislature added "sex" as a protected category. Acts 1971, 62nd Leg.R.S., ch. 989, 1971 Tex.Gen.Laws 2994. In 1983, the Legislature passed the Commission on Human Rights Act and repealed article 6252–16 recodifying its provisions as chapter 106 of the Texas Civil Practice and Remedies Code. Acts 1983, 68th Leg., 1st C.S., 1983 Tex.Gen.Laws 32, 57.

When applying the three principles of statutory construction, giving effect to legislative intent and reading the statute as a whole giving effect to every part we conclude that the acts here are within those contemplated by section 106.001(a)(6). The State's actions in this case are prohibited acts such as envisioned in section 106.001(a)(6). The State's immunity is waived under 106.002(b). We overrule appellant's third point of error. Because we conclude that the State waived its immunity under chapter 106, we decline to address appellant's points of error one and two as they are not necessary for disposition of the case. TEX.R.APP.P. 90(a).

By points five through eight, the State asserts that the trial court erred as a matter of law by awarding attorney fees and costs incurred 1) in challenging the senate redistricting plan, 2) from February 7, 1991, to June 17, 1991, and on the portion of the litigation related to congressional and board of education redistricting, 3) work in extraneous litigation and this case after settlement, and 4) for expert witness fees and expenses

as part of costs. We will address these individually.

■ The State contends that until S.B. 1 is implemented the appellees have not yet received a tangible benefit and, thus, the trial court improperly awarded attorney fees for related work. Appellees assert the judgment entered gave them relief by invalidating HB–150 and SB–31 and by ordering HB–1 and SB–1 into effect.

We agree with appellees and conclude that the court was not barred from awarding attorney fees and costs pertaining to the senate redistricting plan. Appellees succeeded in invalidating HB–150 and SB–30 thus providing a benefit.

The State also contends that attorney fees and costs incurred between February 7, 1991, and June 17, 1991, should not have been awarded because they were incurred while appellees were challenging the board of education redistricting plans. We find such no complaint at the attorney fees hearing nor at the final hearing on January 13, 1992.

The State next complains the trial court erroneously awarded attorney fees and costs for post-settlement work and for work related to litigation other than this lawsuit. The State asserts appellees did not segregate attorney fees for this litigation. Once again, we find no complaint made before the trial court about segregating attorney fees for different lawsuits.

The State next asserts the trial court improperly awarded appellees' expert witness fees as costs. Specifically, the State complains about the court's award of expert fees to the appellees for Dr. Robert Brischetto, Dr. Allan Lichtman and George Korbel.

■ Generally, the prevailing party will recover all court costs. TEX.R.CIV.P. 131. Regardless of any good cause shown, costs of experts are incidental expenses in preparation for trial and not recoverable. *See Whitley v. King*, 581 S.W.2d 541, 544 (Tex.Civ. App.—Fort Worth 1979, no writ) (expert was not court-appointed and performed his duties solely on plaintiff's behalf therefore trial court without authority to assess his expenses as costs).

■ Appellees argue the expert witnesses, although not appointed directly by the trial court were, in effect, court-appointed experts and thus their fees were properly assessed as costs. Appellees allege the three experts analyzed and interpreted redistricting data relied upon by all parties, as well as the trial court. Appellees argue that since the experts performed their duties on behalf of all the parties and the court they, in effect, acted as court-appointed experts.

The State never offered any evidence to rebut appellees' experts' testimony. Additionally, during the January 13, 1992, hearing, the State used the plans and analysis developed by the appellees' experts. We find no objection by the State to the sums submitted by the appellees as expert fees and costs before the trial court. We find no error in the trial court's award of expert fees as costs. We overrule points five through eight.

■ Point nine contends the trial court improperly awarded appellees attorney fees for Travis Heister's work in appearing on behalf of the Hidalgo County Judge and Commissioners Court. The State argues the county commissioners court is a "creature of the state" and as such is specifically barred from receiving attorney fees under Texas Civil Practice and Remedies Code, section 106.002(b). Appellees respond that Hiester appeared on behalf of the residents of Hidalgo County.

Counties are legal subdivisions of the State. TEX. CONST. art. IX § 1. In an action for attorney fees under section 106.002 the prevailing party may recover attorney fees so long as the state is not the prevailing party. TEX.CIV.PRAC. & REM.CODE ANN. § 106.002(b) (Vernon 1986).

We do not find any assertion by the county judge or commissioners that they appeared as representatives of Hidalgo county citizens. The county judge and commissioners cannot be awarded attorney fees under section 106.002(b). The trial court erred as a matter of law in awarding attorney fees to appellees for Hiester's attorney fees. We sustain point nine and reverse the award to appellees of $20,518.15 for Hiester's services.

By point ten, the State asserts that all paralegal fees should be denied as a matter of law. We note no specific amount awarded to appellees for costs of work performed by paralegals. The work performed by paralegals was properly included (at a reduced rate) in the attorney's work product. We overrule point ten.

By point eleven, the State asserts that the trial court erred in awarding attorney fees and costs because the recitations in the judgment were insufficient as a matter of law to support the judgment. In a non-jury trial, where no findings of fact or conclusions of law are filed or requested, it is implied that the trial court made all the necessary findings to support its judgment. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). Furthermore, the failure to request additional findings of fact and conclusions of law constitutes a waiver on appeal of the trial court's failure to make a particular finding. *Keith v. Keith,* 763 S.W.2d 950, 953 (Tex. App.—Fort Worth 1989, no writ).

The State did not request any specific findings or conclusions of law after the trial court's judgment. *See* TEX.R.CIV.P. 296–298. The trial court's judgment on appeal will be upheld unless it can be shown that the evidence does not support any legal theory. *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 279 (Tex.1987). We find the recitations in the judgment were not insufficient as a matter of law to support the judgment. We overrule point eleven.

We must now consider the evidentiary foundation for the award.

The State asserts the trial court erred in allowing George Korbel and Travis Hiester to testify about attorney fees. Specifically, the State contends that Korbel and Hiester were not properly designated as expert witnesses before trial in accordance with Texas Rules of Civil Procedure 166b(2)(e)(1), 166b(6)(b) and 215(5).

Korbel is the director of election litigation for Texas Rural Legal Aid. He was asked by appellees to examine the House and Senate redistricting plans and compare them with the existing plans of apportionment.

Hiester represented the Hidalgo County Judge and County Commissioners who were named originally as defendants in appellees' original petition. The county judge and the commissioners responded, and in their first amended answer brought a cross-action against the Director and the Executive Director of the Legislative Council. Additionally, the county judge and commissioners by this pleading, adopted paragraphs one through forty-three of appellees' original petition. We also note the following language in the States' first amended original answer to appellees' second amended original petition:

> Thus, there being no other real defendants in this action (the county defendants having formally and informally aligned themselves completely with the plaintiffs),. . . .

By this statement it appears the State concedes the county judge and commissioners are appellees. However the State takes a contrary position in their brief to this Court, by asserting the following:

> Although the Hidalgo County Commissioners Court was treated as a plaintiff in the court below, the plaintiffs never took the simple procedural step to officially realign the commissioners court. Procedurally, the commissioners court (and the commissioners) have always been and still are defendants.

The county judge and commissioners were treated as plaintiffs during the course of the proceedings. Therefore, Hiester was an attorney for appellees.

When the appellees called Korbel and Hiester during the November 1991 hearing to testify about attorney fees, the State objected that they were not designated timely as experts. Appellees then asserted that while, perhaps, they had not designated Korbel and Hiester as experts, they had designated them as fact witnesses. The State conceded as much.

The trial court admitted many exhibits addressing appellees' attorney fees without objection. Korbel and Hiester testified at great length about their attorney fees. Korbel and Hiester established that this case involved a significant amount of work. They

went into great detail about the total number of hours expended by persons in their law office including lawyers, clerks, and legal assistants and the hourly rates of these persons. They outlined the type of work performed in the case and the necessity of the work. Additionally, they testified about fees they usually collect in similar litigation. Although they were cross-examined, their testimony was not rebutted by the State.· In light of the detailed, abundant, and relevant factual evidence presented by Korbel and Hiester on the issue of attorney fees, it was not error to admit their testimony as fact witnesses.

■■■ If the reasonableness of attorney fees must be supported by competent evidence. *See City of Fort Worth v. Groves,* 746 S.W.2d 907, 918 (Tex.App.—Fort Worth 1988, no writ) (citing *Espinoza v. Victoria Bank & Trust Co.,* 572 S.W.2d 816, 828 (Tex. Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.), then there is none on that issue. However, appellees argue that TEX.CIV.PRAC. & REM.CODE ANN. § 38.004 (Vernon 1986) can be used in this litigation, thus the lack of expert testimony on the reasonableness issue is not fatal. Section 38.004, entitled Judicial Notice, states:

> The court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in: (1) a proceeding before the court or (2) a jury case in which the amount of attorney's fees is submitted to the court by agreement.

This section deals solely with "usual and customary attorney's fees"; not with the reasonableness issue. Section 38.003 speaks to that issue and states: "It is presumed that the usual and customary fees for a claim of the type described in section 38.001 are reasonable. The presumption may be rebutted." Therefore, section 38.004 allows a trial court to take judicial notice of the "usual and customary attorney's fees" while section 38.003 creates the presumption of "reasonableness" in a claim brought under section 38.001. Section 38.004 standing alone does not provide any statutory assistance in proving the "reasonableness" issue.

Several cases have dealt with sections 38.001, 38.003 and 38.004 and their predecessor, art. 2226, Tex.Rev.Civ.Stat. (repealed).

*Holsworth v. Czeschin,* 632 S.W.2d 643, 645 (Tex.App.—Corpus Christi 1982, no writ), and *Ho v. Wolfe,* 688 S.W.2d 693, 697–98 (Tex.App.—Amarillo 1985, no writ), were cases under 2226 which provided: "The usual and customary fees in such cases shall be presumed to be reasonable, but the presumption may be rebutted by competent evidence. In a proceeding before the court … the court may take judicial knowledge of the usual and customary fees in such matters and of the contents of the case file, without receiving other evidence." *Inwood Dad's Club v. Aldine School Dist.,* 882 S.W.2d 532, 542 (Tex.App.—Houston [1st Dist.] 1994, no writ), was a delinquent tax suit. Appellant argued the district had brought forth no evidence that the attorney's fees were reasonable. The court held "The trial court was entitled to take judicial notice of the usual and customary attorney's fees without any additional evidence," citing *Ross v. 3D Tower, Ltd,* 824 S.W.2d 270, 273 (Tex.App.—Houston [14th Dist.] 1992, writ denied). *Ross v. 3D Tower Ltd.,* was a turnover statute case. TEX.CIV.PRAC. & REM.CODE ANN. § 31.002 (Vernon 1986). Since the underlying case was governed by 38.001, *Carlyle Real Estate v. Leibman,* 782 S.W.2d 230, 233 (Tex.App.—Houston [1st Dist.] 1989, no writ), held 38.001, 38.003 and 38.004 applied to the turnover statute action.

Section 38.004, standing alone, has been used in several instances as justification for attorney's fees. *Matelski v. Matelski,* 840 S.W.2d 124, 130 (Tex.App.—Fort Worth 1992, no writ), involved a motion to modify and clarify a divorce decree. Mrs. Matelski was awarded attorney's fees in the litigation. Mr. Matelski argued there was no testimony that the amount of attorney's fees found by the trial court was reasonable. The court held the trial court could review the file and take judicial notice of the amount of reasonable attorney's fees, citing 38.004. *General Life and Acc. v. Higginbotham,* 817 S.W.2d 830, 833 (Tex.App.—Fort Worth 1991, writ denied), involved the failure to set aside a default judgment. The Fort Worth Court

applied 38.004. *Matter of Estate of Kidd,* 812 S.W.2d 356, 359 (Tex.App.—Amarillo 1991, writ denied), was a discovery sanction issue in a will contest. Although it was not a suit under 38.001, the court relied upon 38.004(2) and 38.003. The court cited *Ho v. Wolfe,* 688 S.W.2d at 697–98, and *Holsworth v. Czeschin,* 632 S.W.2d at 645, as authority.

All of these cases fail to appreciate that article 2226 was divided into 38.004 and 38.003, with 38.003 relating directly to 38.001. Consequently, 38.004 cannot be used to justify the reasonableness of attorney's fees and 38.003 cannot be used outside of a 38.001 action.

There is one case which arguably could be used to justify appellees' position. *White v. Payne,* 821 S.W.2d 727, 728 (Tex.App.—Houston [1st Dist.] 1991, writ denied), was a declaratory judgment case under 37.009. The court used the abuse of discretion standard applied in *Tanglewood Homes Assn. v. Henke,* 728 S.W.2d 39, 44 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). When faced with the contention of failing to prove reasonable and necessary attorneys' fees, the court used testimony from the attorney at the default hearing which stated he had expended 11 hours at the standard community fee of 200 an hour. The court held there was "nothing to suggest this amount was unreasonable or unnecessary; thus no showing of an abuse of discretion." The court determined the issue based upon the abuse of discretion standard rather than making a factual sufficiency analysis. Therefore, we decline to utilize this case as authority in this instance.

There being no evidentiary foundation that the attorneys' fees awarded were reasonable, we sustain points of error four, twelve, thirteen and fourteen.

■■■ Regarding the expert witness fees, Korbel testified all of their hours were reasonable and necessary. Again, we find no evidence to refute Korbel's testimony. After determining the trial court could award Korbel's fees, we find no abuse of discretion in the trial court's awarding the rate and amount. We overrule point fifteen.

By point sixteen, the State complains that the trial court abused its discretion in awarding paralegal fees. We need not address this point because of our disposition of point ten.

We reverse and render the award to appellees of attorney fees for T. Hiester, reverse and remand the award of attorney fees for J. Harrington, J. Sanders–Castro, and J. Garza and affirm the remainder.

REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART; AFFIRMED IN PART.

McCloud, Chief Justice (Retired), concurring and dissenting.

I concur in part and dissent in part. I agree with the majority except as to the affirming of the trial court's award as costs of expert witnesses' fees to appellees for Dr. Robert Brischetto, Dr. Allan Lichtman, and George Korbel. None of these experts were appointed by the court. They were designated by and testified on behalf of the appellees. The trial court erred in awarding these substantial fees as court costs against the State. *King v. Acker,* 725 S.W.2d 750, 755 (Tex. App.—Houston [1st Dist.] 1987, no writ); *Whitley v. King,* 581 S.W.2d 541, 544 (Tex. Civ.App.—Fort Worth 1979, no writ); *City of Houston v. Biggers,* 380 S.W.2d 700, 705 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.), *cert. denied,* 380 U.S. 962, 85 S.Ct. 1105, 14 L.Ed.2d 153 (1965); *Taormina v. Culicchia,* 355 S.W.2d 569, 576 (Tex.Civ. App.—El Paso 1962, writ ref'd n.r.e.).