Opinion issued June 10, 2010 


 

 









In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00887-CV

____________

 RUSSELL SCOTT CLARK, JERRY ANN CLARK, LEVI CLIFFORD
CLARK, CAYLEIGH RENE, A MINOR CHILD BY AND THROUGH
RUSSELL SCOTT CLARK, CHANCE PARKER, A MINOR CHILD BY
AND THROUGH RUSSELL SCOTT CLARK, WHITNEY BLAIR CLARK,
A MINOR CHILD BY AND THROUGH RUSSELL SCOTT CLARK,
BRETT ALLEN METCALF, ROBIN RENEE METCALF SAXON,
BRANDON DEAN METCALF, A MINOR CHILD BY AND THROUGH
ROBIN RENEE METCALF SAXON, SHANON KAY SMALL, AND
JORDAN DANE SMALL, A MINOR CHILD BY AND THROUGH
SHANON KAY SMALL, Appellants


V.


WELLS FARGO BANK, N.A., SUCCESSOR-IN-INTEREST TO FIRST
COMMUNITY BANK, N.A., Appellee






On Appeal from Probate Court No. 1

Harris County, Texas

Trial Court Cause No. 350,072-404






 MEMORANDUM OPINION


 In this dispute over survivorship rights to several certificates of deposit
("CDs"), appellants, Russell Scott Clark, Jerry Ann Clark, Levi Clifford Clark,
Cayleigh Rene, a minor child by and through Russell Scott Clark, Chance Parker, a
minor child by and through Russell Scott Clark, Whitney Blair Clark, a minor child
by and through Russell Scott Clark, Brett Allen Metcalf, Robin Renee Metcalf Saxon,
Brandon Dean Metcalf, a minor child by and through Robin Renee Metcalf Saxon,
Shanon Kay Small, and Jordan Dane Small, a minor child by and through Shanon Kay
Small (collectively "Claimants"), contend that the trial court erred in granting
summary judgments in favor of appellees, Wells Fargo Bank, N.A., successor-in-interest to First Community Bank, N.A., ("Wells Fargo"). 

 In this instant appeal, Claimants allege that Wells Fargo tortiously interfered
with their inheritance rights and was negligent with respect to the CDs and that the
trial court therefore erred by granting summary judgment in Wells Fargo's favor. 

 We affirm. 

Background

 In the early 1990s, Parker Williams purchased six CDs from First Community
Bank Houston (the "Original CDs"). (1) These CDs, which totaled $1,253,907.50,
carried the name of Williams and Claimants and were each marked as a "Multiple-Party Account with Right of Survivorship." The Original CDs provided:

 Multi-Party Account with Right of Survivorship - The parties to the
account own the account in proportion to the parties' net contributions
to the account. We may pay any sum in the account to a party at any
time. On the death of a party, the party's ownership of the account
passes to the surviving parties.


 Withdrawals - Unless otherwise clearly indicated on the account
records, any one of you who signs this form including authorized
signors may withdraw or transfer all or any part of the account balance
at any time on forms approved by us.


Williams was the only one who signed the account agreements, and Claimants were
unaware that the CDs existed. 

 In July of 2004, Williams met with a Wells Fargo employee in Houston and
was told that the CDs were not fully covered by Federal Deposit Insurance
Corporation ("FDIC") insurance. Williams was advised that the First Community
Bank San Antonio, N.A. (2) could provide her with the requisite excess deposit
insurance coverage. She purchased six new fully-insured CDs at the San Antonio
location (the "New CDs"). These New CDs were set up in Williams's name only, and
she initialed the "Single-Party Account Without 'P.O.D.' Designation" on each of the
account agreements. The new accounts provided:

 Single-Party Account Without P.O.D. Designation - The party to the
account owns the account. On the death of the party, ownership of the
account passes as a part of the party's estate under the party's will or by
intestacy. 


One month later, on August 25, 2004,Williams died intestate. Claimants are not
Williams's heirs or legatees under the laws of intestate distribution.

 On March 23, 2005, upon request from Williams's administrator, Wells Fargo
wired the funds from the New CDs to Williams' estate ("the Estate"). One month
later, on April 29, 2005, Claimants filed a presentment of claim in the probate court
demanding payment of the CDs. The Estate denied the claim, and Wells Fargo filed
a lawsuit, seeking declaratory judgment.

 Wells Fargo's petition for declaratory judgment sought (1) a determination of
the construction and validity of the CDs; (2) a declaration of rights, status, or other
legal relations between Wells Fargo, Williams's estate, and Claimants; (3) a
declaration of rights, if any, of Claimants to the CDs at the time of Williams's death;
and (4) a determination of any other questions as to any of Claimants' ownership of
the CDs other than as Williams's heirs. 

 Claimants filed an original third-party petition that sought resolution to the
same issues presented by Wells Fargo. 

 Three months later, Wells Fargo filed a traditional motion for interlocutory
summary judgment asking the trial court to issue a declaration regarding (1) the
validity and enforceability of the account documents underlying the Original CDs;
(2) whether Williams was a person with the right to withdraw or transfer the funds
represented by the Original CDs; (3) whether Williams had the right to withdraw or
transfer at any time all or any part of the funds represented by the Original CDs; and
(4) Wells Fargo's discharge from claims for amounts paid by or on behalf of Wells
Fargo to Williams as proceeds from the Original CDs. The Estate adopted Wells
Fargo's traditional motion for summary judgment and also filed a no-evidence
summary judgment. 

 Claimants subsequently amended their petition to assert, for the first time,
affirmative tort claims against the Estate and Wells Fargo. Specifically, Claimants
allege that it was "unnecessary for Parker Williams to modify the multi-party [CDs]
and that Parker Williams intended for Claimants to receive the funds contained within
the [CDs] that were transmitted to the [Estate]." Claimants alleged, in the alternative,
that, if the court determined that the Estate is the rightful owner of the New CDs,
"Wells Fargo tortiously interfered with Claimants' inheritance rights." Claimants
further alleged that "Wells Fargo was negligent with respect to banking, investment,
and FDIC coverage advice provided to Parker Williams." 

 On August 3, 2006, the trial court ordered as follows:

 1. Judgment that the Account documents underlying the Original
CDs are valid and enforceable against Claimants.


 2. Judgment that PARKER WILLIAMS was a person with the right
to withdraw or transfer the funds represented by the Original
CDs.


 3. Judgment that PARKER WILLIAMS had the right to withdraw
or transfer at any time all or any part of the funds represented by
the Original CDs.


 4. Judgment that WELLS FARGO is discharged from claims for
amounts paid by or on behalf of Plaintiff to PARKER
WILLIAMS as proceeds from the Original CDs.


 5. An award of attorney's fees in the amount of $18,012.00.


 6. Judgment for its costs of suit. 


Wells Fargo's case was severed from the remaining action. The trial court granted
the Estate's traditional and no-evidence motions for summary judgment. 

 Claimants filed an appeal to this Court. See Clark v. Wells Fargo Bank, Nos.
01-06-896-CV and 01-07-00165-CV, 2008 WL 866499 (Tex. App.--Houston [1st
Dist.] 2008, no pet.) ("Clark I"). In Clark I, we dismissed Claimants' appeal of the 
summary judgment in Wells Fargo's favor for want of jurisdiction, holding that the
court's judgment was not final because Wells Fargo's motion for summary judgment
had not addressed the tort claims that Claimants added to their petition after the
motion was filed. We affirmed the summary judgment in favor of the Estate.

 On remand, Wells Fargo filed traditional and no-evidence motions for summary
judgment that specifically addressed Claimants' new tort claims. In its motions for
summary judgment filed after remand, Wells Fargo first argued that the tort claims
asserted in Claimants' First Amended Petition were resolved, in part, by the trial
court's interlocutory judgment on its first round of summary judgment motions, and
that, consequently, "Wells Fargo is absolved from liability for any and all claims
related to the closing and/or payment of the Original CDs. Any purported tort claims
that Claimants assert against Wells Fargo would need to rely exclusively on tortious
actions taken after (1) the Original CDs were closed and (2) Claimants' contingency
interests in the Original CDs extinguished." For their part, Claimants seem to agree,
conceding "Claimants' live pleading relates to the new CDs and tortious actions taken
by Wells Fargo after the original CDs were closed." 

 Wells Fargo moved for traditional summary judgment on Claimants'
negligence and tortious interference with inheritance on the following grounds: (1)
Texas Probate Code section 448 discharges Wells Fargo from liability for payment
or transfer of the Original CDs; (2) Claimants lacked an expectancy interest in the
New CDs; and (3) Claimants were strangers to the New CDs and Wells Fargo did not
owe any duty to Claimants relating to the New CDs.

 Wells Fargo's no-evidence motion for summary judgment asserted that
Claimants' tortious interference claim should be dismissed because Claimants failed
to present any evidence of (a) an expectancy interest in the New CDs, (b) that Wells
Fargo intentionally interfered with Claimants' expectancy interest, (c) that such
interference constituted conduct tortious in itself, and (d) that there was a reasonable
certainty that the funds at issue would have been received by Claimants but for Wells
Fargo's purported tortious interference. Similarly, Wells Fargo alleged that
Claimants failed to present any evidence on their negligence claims regarding (a) any
duty Wells Fargo owed Claimants or (b) any breach of any such duty owed to
Claimants.

 The trial court granted Wells Fargo's traditional and no-evidence motions for
summary judgment, and this appeal followed. 

 Claimants now argue that the trial court erred by granting Wells Fargo's
traditional and no-evidence motions for summary judgment. Essentially, Claimants
contend that they had an interest in the New CDs and that Wells Fargo tortiously
interfered with that interest.

Analysis

A. Standard of Review

 A party moving for traditional summary judgment must conclusively prove all
of the elements of its cause of action or defense as a matter of law. Tex. R. Civ. P.
166a(c); Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex.
2001); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 222-23 (Tex. 1999). When
a summary judgment does not specify or state the grounds on which the trial court
relied, the non-movant on appeal must negate any grounds on which the trial court
could have relied, and we will affirm the summary judgment on appeal if any of the
grounds presented in the motion is meritorious. See Harwell v. State Farm Mut. Auto.
Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995); Mellon Serv. Co. v. Touche Ross & Co.,
17 S.W.3d 432, 435 (Tex. App.--Houston [1st Dist.] 2000, no pet.). A non-movant
is required to show that each ground alleged in the motion for summary judgment was
insufficient to support summary judgment. Star-Telegram, Inc. v. Doe, 915 S.W.2d
471, 473 (Tex. 1995).

 To prevail on a no-evidence summary judgment motion, a movant must allege
that there is no evidence of an essential element of the adverse party's cause of action. 
Tex. R. Civ. P. 166a(i); Fort Worth Osteopathic Hosp., Inc. v. Reese, 148 S.W.3d 94,
99 (Tex. 2004). We review a no-evidence summary judgment under the same legal
sufficiency standard used to review a directed verdict. Gen. Mills Rests., Inc. v. Tex.
Wings, Inc., 12 S.W.3d 827, 832-33 (Tex. App.--Dallas 2000, no pet.). Although
the non-moving party is not required to marshal its proof, it must present evidence
that raises a genuine issue of material fact on each of the challenged elements. Tex.
R. Civ. P. 166a(i); Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). 
A no-evidence summary judgment motion may not properly be granted if the
non-movant brings forth more than a scintilla of evidence to raise a genuine issue of
material fact on the challenged elements. Ridgway, 135 S.W.3d at 600. More than
a scintilla of evidence exists when the evidence "rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions." Merrell Dow
Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). When a party moves for
both a traditional and a no-evidence summary judgment, we first review the trial
court's summary judgment under the no-evidence standard of Texas Rule of Civil
Procedure 166a(i). Ridgway, 135 S.W.3d at 600. If the no-evidence summary
judgment was properly granted, we do not reach arguments under the traditional
motion for summary judgment. Id.

B. Texas Probate Code Section 448


 On appeal, Claimants argue that Texas Probate Code section 448 does not bar
their tort claims relating to the New CDs, which were issued after Parker Williams
closed the original multi-party CDs at Wells Fargo. Specifically, Claimants argue
that Texas Probate Code section 448 does not apply to the New CDs because the New
CDs are single-party accounts and section 448, by its plain language, applies only to
multiple-party CDs such as the original CDs. In addition, Claimants argue that
section 439A(a) of the Probate Code limits the protections of section 448 and
prevents it from applying to the New CDs in this case. 

 Section 444 of the Probate Code allows for the creation of multiple-party
accounts at financial institutions and states, "A multiple-party account may be paid,
on request, to any one or more of the parties." Tex. Prob. Code Ann. § 444 (Vernon
2003). Section 448 provides, in part, 

 Payment made as provided by Section 444 . . . of this code discharges
the financial institution from all claims for amounts so paid whether or
not the payment is consistent with the beneficial ownership of the
account as between parties, P.O.D. payees, or beneficiaries, or their
successors.


Id. § 448. Claimants also point to section 439A(a), which at the time stated that the
"the provisions of this part of Chapter XI of this code govern an account . . . other
than a single-party account without a P.O.D. designation." Id. § 439A(a) (amended
2009). 

 Claimants do, however, concede that "[u]nder Section 448, Wells Fargo was
discharged from claims for the 'payment' it made to Parker as a joint owner when it
closed the original CDs." This concession is in accordance with both section 448 and
with case law. See, e.g., Bandy v. First State Bank, 835 S.W.2d 609, 615-16 (Tex.
1992) (holding bank not liable for paying funds to one of named holders of a joint
account, even after executor of other named holder's estate demanded payment);
MBank Corpus Christi, N.A. v. Shiner, 840 S.W.2d 724, 727 (Tex. App.--Corpus
Christi 1992, no writ) ("Thus, between competing interests in a joint account, the
bank is fully discharged from liability when it pays the other party on the account,
unless one of the parties gives written notice to the bank that no payment should be
made."). 

 Thus, to the extent that any of Claimants' causes of action relate to the Original
CDs or to actions taken before the Original CDs were closed, those claims are barred
by section 448. Our analysis of Claimants' tort claims will therefore focus on
whether the trial court erred by granting summary judgment on the causes of action
Claimants asserted against Wells Fargo based on any acts or omissions by Wells
Fargo that occurred after the Original CDs were closed--i.e., whether Wells Fargo
tortiously interfered with or was negligent with respect to any interests Claimants may
have had in the New CDs.

C. Tortious Interference with Inheritance

 

 This Court recognized the potential cause of action for tortious interference
with inheritance in King v. Acker, 725 S.W.2d 750 (Tex. App.--Houston [1st Dist.]
1987, no writ). Citing the Restatement (Second) of Torts and caselaw from other
jurisdictions, King stated that "[o]ne who by fraud, duress or other tortious means
intentionally prevents another from receiving from a third person an inheritance or
gift that he would otherwise have received is subject to liability to the other for loss
of the inheritance or gift." 725 S.W.2d at 754. Comment c to Restatement section
774B explains that "the liability stated in this Section is limited to cases in which the
actor has interfered with the inheritance or gift by means that are independently
tortious in character." Restatement (Second) of Torts § 774B cmt. c (1979). 
Comment d further requires "proof amounting to a reasonable degree of certainty that
the bequest or devise would have been in effect at the time of the death of the testator
or that the gift would have been made inter vivos if there had been no such
interference." Id. at cmt. d.

 Thus, in order to sustain a cause of action for tortious interference with
inheritance, a plaintiff must present some evidence that he in fact stood to inherit or
receive the property at issue. Claimants did not provide any evidence in response to
Wells Fargo's motion for no-evidence summary judgment that they actually had an
interest in the New CDs such that they could sustain a cause of action for tortious
interference. See, e.g., In re Estate of Kuykendall, 206 S.W.3d 766, 771 (Tex. App.--
Texarkana 2006, no pet.) (upholding instructed verdict on claim of tortious
interference with inheritance because "[p]laintiffs offered nothing to establish there
was anything to which they were entitled that Harold prevented them from
receiving."). 

 Further, Claimants have produced no evidence of any intentional tortious
conduct by Wells Fargo--instead, much of the evidence upon which they rely was
excluded by the trial court. See, e.g., Little v. Needham, 236 S.W.3d 328, 331 (Tex.
App.--Houston [1st Dist.] 2007, no pet.) (when trial court sustained objection to
summary judgment evidence and briefing on appeal relied on evidence but did not
attack merits of trial court's ruling, appellate court may not consider the evidence)
(citing Inglish v. Prudential Ins. Co. of America, 928 S.W.2d 702, 706 (Tex.
App.--Houston [1st Dist.] 1996, writ denied)). 

D. Negligence


 Claimants also argue that Wells Fargo was negligent when it failed to take
sufficient steps to protect Claimants' inheritance rights when opening the New CDs
in San Antonio without a right of survivorship. In addition, Claimants argue that
Wells Fargo owed them a duty because it knew of their interests in the Original CDs
and knew that they had rights of survivorship on those prior CDs. Claimants argue
that, when harm is foreseeable, a duty exists. 

 The elements of a negligence claim are: (1) breach of (2) a legal duty owed to
another, and (3) damages proximately caused by the breach. D. Houston, Inc. v.
Love, 92 S.W.3d 450, 454 (Tex. 2002). Proximate cause requires cause in fact and
foreseeability; harm is foreseeable if a person of ordinary intelligence should have
anticipated the danger her negligence created for others. Id. (quoting El Chico Corp.
v. Poole, 732 S.W.2d 306, 313 (Tex.1987)). 

 Wells Fargo filed a no-evidence summary judgment motion as to each of the
three elements. Further, Wells Fargo's traditional motion for summary judgment
argued that Wells Fargo did not have any duty to Claimants and that Claimants'
allegations were an "attempt to piggyback on purported actions directed toward
Williams because Claimants had no dealings whatsoever with Wells Fargo." 
Alternatively, Wells Fargo argued that any duty it may have had to Claimants would
have been grounded in the account documents governing the original CDs and would
thus be based in contract. 

 We agree with Wells Fargo's first contention and thus need not reach the
others. Claimants' pleadings reveal that all of the actions for which Claimants seek
to recover on their negligence cause of action were directed at Parker Williams and
related to the duties Wells Fargo owed to Williams. With regard to Wells Fargo's
actions relating to the New CDs, Claimants' First Amended Petition alleged that 

 Wells Fargo was negligent with respect to banking, investment, and
FDIC coverage advice provided to Parker Williams. Wells Fargo owed
a duty (both common law and as a fiduciary) to Claimants as co-owners
of the multi-party certificates of deposit to provide sound and accurate
advice regarding applicable insurance coverage on the certificates of
deposit. Wells Fargo also had a duty to inquire as to the type of account
Parker Williams desired after it was represented by Wells Fargo that the
certificates of deposit were not fully insured. Because Wells Fargo
failed to provide and/or obtain adequate and correct information, Parker
Williams was forced to modify her certificates of deposit which
consequently led to the loss of inheritance on behalf of the Claimants. 


In addition, none of these allegations relate to actions taken after the closing of the
original CDs. There is no evidence that Wells Fargo owed any legal duty to
Claimants. 

 Claimants point us to A.G. Edwards & Sons v. Beyer, 235 S.W.3d 704 (Tex.
2007), which they argue stands for the proposition that banks have independent duties
to persons with potential inheritance rights in investment vehicles. The facts of
Beyer, however, are clearly distinguishable from this case. In Beyer, a father and
daughter sought to open a joint account with a right of survivorship and they signed
and delivered documents to that effect, thus creating a contract between themselves
and the financial institution. The financial institution lost the documents prior to
actually opening the account. After her father died intestate and the money was
distributed amongst herself and her five siblings rather than being paid directly to her,
the daughter sued the financial institution for breach of contract. Id. at 707. A jury
returned a verdict in her favor and the Texas Supreme Court affirmed the award,
noting that the suit did not implicate the Texas Probate Code's protections against
liability for payment on joint accounts because "A.G. Edwards' failure to take
sufficient steps to create the JTWROS account necessary to establish Alicia's right
of survivorship is a breach of a separate duty owed to Alicia." Id. at 708. The context
of the language in the opinion makes it clear that the Court was referring to the duties
arising out of the contract signed by Alicia and her father--"The evidence showed
that Alicia and her father performed the steps necessary to set up [an account], but
A.G. Edwards did not perform as agreed." Id. 

 Here, in contrast, Claimants did not have a contractual relationship with Wells
Fargo--there is no evidence that they ever participated in the opening of the C.D.s 
or, as in Beyer, jointly executed any documents with Williams that would have given
them any rights to the funds at issue. We therefore find this case wholly
distinguishable from Beyer. 

 Accordingly, we hold that the trial court did not err by granting summary
judgment in favor of Wells Fargo. We overrule Claimants' issues. 


Conclusion

 The trial court did not err by granting summary judgment in Wells Fargo's
favor on Claimants' First Amended Petition. We overrule Claimants' issues on
appeal and affirm the judgment of the trial court.

 


 George C. Hanks, Jr.

 Justice



Panel consists of Justices Keyes, Alcala and Hanks.











 
1. First Community Bank Houston was later purchased by Wells Fargo and will be
referred to as "Wells Fargo." 
2. First Community Bank San Antonio is a separate business entity with its own
charter. It was not purchased by Wells Fargo.