In re ESTATE OF Katie
KUYKENDALL,
Deceased.

No. 06–05–00037–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 4, 2006.

Decided Nov. 2, 2006.

---

Before MORRISS, C.J., CARTER and CORNELIUS,* JJ.

## OPINION

Opinion by Justice CORNELIUS (Retired).

Several heirs of Katie Kuykendall, deceased (Plaintiffs), brought this action against their fellow heir, Harold Kuykendall (Defendant), seeking to set aside Katie's will previously admitted to probate as a muniment of title; for a declaratory judgment; and to recover damages for fraud and conspiracy to dissipate assets of the estate, and for interference with Plaintiffs' inheritance rights. After a jury trial, the trial court instructed a verdict against Plaintiffs and refused Defendant's request for attorney's fees. We affirm the trial court's judgment in all respects.

Katie died March 27, 2001. She had executed a will in 1983 that made several specific devises and bequests to the children who had been born to her and her late husband, Jim Kuykendall, who predeceased her in 1967. Jim had been married once before his marriage to Katie, and

brought two children to his second marriage: a son, John Doyle Kuykendall, and a daughter, Alice Mozelle Henry. Harold, son of Jim and Katie, was named as independent executor in Katie's will. Rather than offering Katie's will for general probate, however, Harold offered her will for probate as a muniment of title, and the Rusk County Court at Law admitted the will to probate for that limited purpose. In February 2002, Cheryl Martin, acting as next friend for her mother, Alice Mozelle Henry; Kay Gibbs, and Ann Young, daughters of John Doyle Kuykendall; and Kristi Coile, granddaughter of Mary Reed, who was one of five children born to Jim and Katie, filed an application to set aside the will that had been admitted as a muniment of title. Plaintiffs petitioned the trial court not only to set aside the will admitted as a muniment of title, but also to admit to probate a joint and mutual will executed by Jim and Katie in 1954, which Plaintiffs alleged was contractual, and to impose a constructive trust on all assets of Katie's estate. The suit also alleged that Harold and his sisters, Jane, Linda, and Kathryn, conspired to defraud Plaintiffs of their rightful shares of the estates. Additionally, the suit requested a declaratory judgment that the 1954 joint and mutual will was contractual.[1]

Following a three-day trial, the trial court granted Defendant's motion for an instructed verdict, finding that Gibbs and Young lacked standing to sue because they had no interest in Katie's estate; there were no pleadings to support an action for constructive trust or tortious interference with inheritance rights; and there was no evidence to support a judgment for Plain-

---

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

1. In a summary judgment proceeding shortly before this action came to trial, the trial court

granted Harold's motion for a no-evidence summary judgment on the issue of whether the 1954 will was contractual, effectively ending litigation concerning the 1954 will.

tiffs. The trial court also denied the Defendant's request for attorney's fees under the Declaratory Judgments Act. Both sides appealed, Plaintiffs from the instructed verdict finding lack of standing, lack of pleadings, and lack of evidence; and Defendant from the denial of attorney's fees.

Because the appeal of Plaintiffs goes more to the actual merits of the case, we first consider their appeal. And because we conclude that the trial court correctly found Plaintiffs produced no evidence of the essential elements of their causes of action, we find it unnecessary to address their points of error regarding standing and pleadings.

■ We begin with Plaintiffs' third point of error complaining of the trial court's ruling there was no evidence of reliance, fraud, or tortious interference with inheritance rights. A trial court properly grants a motion for instructed verdict if there is no evidence of probative force raising fact questions on the material issues involved in the case. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). In reviewing the trial court's ruling, we must consider all the evidence in the light most favorable to Plaintiffs. *Id.* If reasonable minds may differ as to the truth of controlling facts, an instructed verdict is improper. *Id.; see also Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 696 (Tex.App.-Fort Worth 2006, pet. denied); *Rogers v. Ricane Enters., Inc.*, 930 S.W.2d 157, 177 (Tex.App.-Amarillo 1996, writ denied).

■ Plaintiffs' pleadings alleged a cause of action for conspiracy, but Plain-

tiffs have waived that issue on appeal.[2] To sustain a cause of action for actual fraud, the plaintiffs must prove (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce plaintiffs to act on the representation; and (4) plaintiffs actually and justifiably relied on the representation and thereby suffered damages. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573 (Tex.2001). Common-law fraud includes both actual and constructive fraud. *Chien v. Chen*, 759 S.W.2d 484, 494–95 (Tex.App.-Austin 1988, no writ).

■ In traditional or actual fraud, there must be an intentional breach of some duty. In constructive fraud, however, the actor's intent is irrelevant. *Sprick v. Sprick*, 25 S.W.3d 7, 15 (Tex.App.-El Paso 1999, pet. denied). Constructive fraud "encompasses those breaches that the law condemns as 'fraudulent' merely because they *tend* to deceive others, violate confidences, or cause injury to public interests, the actor's mental state being immaterial." *Chien v. Chen*, 759 S.W.2d at 495 (citing *Archer v. Griffith*, 390 S.W.2d 735 (Tex.1965)). Constructive fraud may occur where one violates a fiduciary duty, but Harold had no fiduciary duty to Plaintiffs. He was named as independent executor in Katie's will, but he probated the will only as a muniment of title. He never sought or obtained letters testamentary, and he was never appointed as an estate representative. In a muniment of title

---

**2.** Plaintiffs offered no argument, authority, or analysis on appeal regarding the trial court's ruling on conspiracy. The Texas Rules of Appellate Procedure require an appellant's brief to contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. Tex.R.App. P. 38.1(h); *Decker v. Dunbar*, 200 S.W.3d 807 (Tex.App.-Texarkana, 2006, no pet. h.); *Green v. Kaposta*, 152 S.W.3d 839, 841 (Tex.App.-Dallas 2005, no pet.). We overrule Plaintiffs' fourth point of error regarding no evidence of conspiracy as inadequately briefed.

situation, as a matter of law, there is no fiduciary duty, and a claim for a breach of that relationship fails. *Power v. Chapman*, 994 S.W.2d 331, 336 (Tex.App.-Texarkana 1999, no pet.).

■■■ Constructive fraud may also consist of a breach of a confidential relationship, which may arise where one person trusts and relies on another, whether the relationship is moral, social, familial, or merely a personal one. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex.1992). However, such a relationship is an extraordinary one and will not be lightly created. The mere fact that one subjectively trusts another does not, alone, indicate that confidence is placed in another in the sense of a fiduciary duty. Some such relationship prior to and apart from the transaction at issue between the parties is required. *Pinnacle Data Servs., Inc. v. Gillen*, 104 S.W.3d 188, 198 (Tex.App.-Texarkana 2003, no pet.); *Hoggett v. Brown*, 971 S.W.2d 472, 478 (Tex.App.-Houston [14th Dist.] 1997, writ denied); *Kline v. O'Quinn*, 874 S.W.2d 776 (Tex.App.-Houston [14th Dist.] 1994, writ denied); *Stephanz v. Laird*, 846 S.W.2d 895 (Tex.App.-Houston [1st Dist.] 1993, writ denied). Plaintiffs presented no evidence of this kind of confidential relationship between any of them and Harold. Jane Clements testified she loved and trusted Harold, but she was not a plaintiff. Kay Gibbs testified that she knew Harold as the overseer of the family and that she had a lot of faith and trust in him. Ann Young testified she thought Harold had defrauded Kristi by taking Kristi's royalty interest in the oil and gas bequest, and Ann did not think Harold had probated Katie's will the way Katie would have wanted. But there is no evidence of the kind of confidential relationship between Harold and Plaintiffs that would satisfy the law's requirements

for a fiduciary duty. Moreover, Plaintiffs admitted throughout the trial that they had suffered no economic damages, and on appeal they point us to no evidence that they incurred any damage.

With no evidence of any representation by Harold, much less how or if any of Plaintiffs relied on any representations, there is no evidence of two of the elements required to prove actual fraud. Similarly, in the absence of any evidence of a fiduciary or confidential relationship, Plaintiffs failed to produce any evidence of constructive fraud. Finally, the complete absence of evidence of damages entitled Harold to an instructed verdict.

■■■ As for the claim of tortious interference with inheritance rights, most of the evidence at trial concerned events before Katie's death. To the extent Plaintiffs complained of the gifts or disbursements Harold made to other members of the family, Plaintiffs offered nothing to establish there was anything to which they were entitled that Harold prevented them from receiving. We find only one case in Texas recognizing a tort of tortious interference with inheritance rights. *King v. Acker*, 725 S.W.2d 750 (Tex.App.-Houston [1st Dist.] 1987, no writ). Citing the Restatement (Second) of Torts and caselaw from extra-Texas jurisdictions, the Texas First Court of Appeals held that one who by fraud or other tortious conduct intentionally prevents another from receiving an inheritance from a third person may be liable to the other for the loss of the inheritance. In *King*, the tortfeasor was found to have offered to probate an illegitimate will and to have forged a power of attorney and used those instruments to try to prevent rightful beneficiaries from having assets devised or bequeathed to them in a valid will. Looking at the evidence here in the light most favorable to Plaintiffs, there is no evidence that Harold or

his sisters intentionally tried to prevent any Plaintiff from receiving any devise or bequest in Katie's will. Indeed, there is no evidence that Harold interfered with anyone's right to receive anything under Katie's will. The devisees and legatees under that will received legal title to the devises and bequests provided for them in the will when the will was admitted to probate as a muniment of title. Any cause of action Plaintiffs may have had against Harold, even if proved, would have been for converting or diverting those devises and bequests after they were inherited, not for interfering with the inheritance of them.

It is unnecessary to address Plaintiffs' other points of error, as the complete lack of evidence to support their pleaded causes of action is fatal to their recovery.

 The trial court denied Harold's request to award him attorney's fees. Harold contends on appeal that, because there was uncontroverted evidence of his attorney's fees and he prevailed in his defense, the trial court abused its discretion in refusing to award him attorney's fees. The Declaratory Judgments Act provides that, in any proceeding under the Act, the court may award costs and reasonable and necessary attorney's fees as are equitable and just. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). The Act does not require that the trial court award attorney's fees. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex.1998). The decision whether to award attorney's fees to any party is placed in the sole discretion of the trial court. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 162 (Tex.2004); *Bocquet v. Herring*, 972 S.W.2d at 21. Harold provides no authority for his assertion that, where the evidence that attorney's fees were incurred is uncontroverted, the trial court must award some attorney's fees. Indeed, the authori-

ties make it clear that the trial court may decide it is not equitable or just to award attorney's fees even where it is stipulated or the evidence is uncontroverted that attorney's fees were incurred and they are reasonable and necessary. *Bocquet v. Herring*, 972 S.W.2d at 21; *Texstar N. Am., Inc. v. Ladd Petroleum Corp.*, 809 S.W.2d 672 (Tex.App.-Corpus Christi 1991, writ denied); *Carr v. Bell Sav. & Loan Ass'n*, 786 S.W.2d 761 (Tex.App.-Texarkana 1990, writ denied). The trial court's decision whether to award attorney's fees in a declaratory judgment case depends on the court's conclusion whether it is just and equitable to do so under all the circumstances of the case, not on the quantum of proof as to the amount incurred or the reasonableness and necessity of such fees.

For the reasons stated, we affirm the judgment of the trial court.