# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00037-CV

---

**River Creek Development Corporation and City of Hutto, Texas, Appellants**

**v.**

**Preston Hollow Capital, LLC; 79 HCD Development, LLC;
Public Finance Authority; and U.S. Bank National Association, Appellees**

---

**FROM THE 425TH JUDICIAL DISTRICT COURT OF WILLIAMSON COUNTY
NO. 21-0759-C425, THE HONORABLE BETSY F. LAMBETH, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

River Creek Development Corporation (River Creek) and the City of Hutto, Texas (the City), appeal from the trial court's final judgment rendered in favor of Preston Hollow Capital, LLC; 79 HCD Development, LLC; Public Finance Authority; and U.S. Bank National Association. The judgment granted appellees' respective summary-judgment motions and awarded each of them attorney's fees and costs. For the following reasons, we affirm the final judgment.

### BACKGROUND

In June 2018, the City passed a resolution authorizing creation of the Hutto Co-Op Public Improvement District (the PID) to undertake and finance public improvements for the benefit of property (about thirty-five acres) within the PID. The PID's 2018 Service and Assessment Plan identified the initial improvements—landscaping, sewage, drainage, and

paving—at a cost of $17.4 million. In September 2018, the City passed a resolution authorizing the creation of River Creek, a local government corporation, to "assist with the financing" of the PID development. See Tex. Transp. Code § 431.101 ("Creation of Local Government Corporation"). In December 2018, the City, River Creek, and other parties executed a series of agreements to secure the development and financing of the PID. Among the parties in some of those agreements is appellee Public Finance Authority (PFA), a Wisconsin-based governmental entity. According to PFA's website, the entity was established "by local governments . . . for the purpose of issuing tax-exempt and taxable conduit bonds for public and private entities nationwide for projects that are important to the community and present no risk to . . . any state or local government." PFA has issued bonds for projects in forty-eight states. Rather than issue the bonds themselves, the City and River Creek chose to structure the transaction using PFA as a conduit issuer of the bonds to avoid potential liability and reduce financial risk.

The December 2018 agreements included the following: (1) a loan agreement and promissory note by which River Creek, with the City's authorization, borrowed $17.4 million from PFA; (2) an interlocal agreement by which the City agreed to purchase from River Creek—through levied assessments and certain other revenues, structured as an installment sale—the PID public improvements, with River Creek using the City's payments to pay off the promissory note; and (3) a construction contract by which appellee 79 HCD Development (79 HCD) contracted with River Creek to build the public improvements in the PID that would be sold to the City under the interlocal agreement. To fund its loan to River Creek, PFA issued bonds. After these transactions were consummated and PFA issued the bonds, appellee Preston Hollow Capital, LLC (Preston Hollow) purchased the bonds. Under the terms of the agreements, Preston Hollow is to be repaid from the funds that River Creek pays under the promissory note, and appellee U.S. Bank National

2

Association (U.S. Bank) serves as trustee for the transaction with responsibility for receiving River Creek's payments on the promissory note and paying those monies to the bondholders. The City's then-Mayor, Doug Gaul, and Mayor Pro Tem, Tom Hines, were among the original directors of River Creek, appointed by the City Council. Gaul executed the loan agreement, promissory note, and interlocal agreement on behalf of both River Creek and the City.

Beginning a few months after the subject transactions were consummated, the City underwent a series of changes in leadership. Tanner Rose and Mike Snyder were elected to the City Council in March 2019. Rose was later appointed chair of River Creek after Gaul resigned, and in early 2021 Snyder was elected Mayor. By March 2020, Hutto was facing significant financial difficulties, having to lay off forty-eight employees. In his deposition, Snyder blamed former City Manager Odis Jones for "mismanaging" the City's finances. Rose, in his deposition, stated that Gaul had been incompetent as chair of River Creek and as Mayor and "led the City into economic duress." In June 2020, the City terminated its longstanding relationship with the law firm McGinnis Lochridge, which had advised it on the subject transactions, and engaged new counsel. In October 2020, the City—through the Williamson County Attorney—sent a request to the Texas Attorney General (AG) for an opinion about the validity of the subject transactions, specifically asking whether (1) the PID assessments levied by the City under Chapter 372 of the Local Government Code may be used to pay debt-service costs on the loan at issue, and (2) Chapter 431 of the Transportation Code requires the loan agreement and promissory note to be submitted to the AG for approval. The AG's April 2021 opinion was equivocal: Because the City's question "requires a construction of the various contracts and the application of facts to those contracts, both of which are tasks outside the purview of an Attorney General opinion," "we do not opine on the ultimate propriety of the transactions," and "we do not offer an opinion on whether this

3

particular set of transactions complies with [Local Government Code] chapter 372." *See* Tex. Att'y Gen. Op. No. KP-0366 (2021); *see generally* Tex. Loc. Gov't Code §§ 372.001–.030 (the Public Improvement District Assessment Act, referred to by the parties as the PID Act).

A few months later, the City and River Creek filed this lawsuit against appellees. By that time, according to Rose's deposition, the PID improvements were well underway, and at least $16 million of the total $17.4 million loan had been expended. In their verified original petition and application for temporary restraining order and permanent injunction, the City and River Creek sought declaratory relief under Chapter 37 of the Civil Practice and Remedies Code (the Uniform Declaratory Judgments Act, or UDJA), alleging that they are interested parties who seek a declaration of rights, status, and legal relations under the above contracts and written instruments as well as under Texas statutes. *See* Tex. Civ. Prac. & Rem. Code § 37.004. They sought the following declarations: (a) an "installment sales contract" described by the interlocal agreement provides "insufficient legal authority for all stated installment payments due under such a contract to be authorized costs of improvements under the PID Act"; (b) the bonds were not issued in strict compliance with the PID Act and applicable state law; (c) Transportation Code Section 431.006 limits the applicability of the general authority of Chapter 22, Business Organizations Code, because of the express statutory requirement in Section 431.071 that "notes" be submitted to the attorney general or the express statutory statement in Section 431.108 that the operations of a local government corporation are governmental; and (d) Government Code Section

4

1202.003 requires all promissory notes issued by a Chapter 431 corporation or a local government corporation be submitted to the attorney general for examination.[1]

Preston Hollow answered and filed a counterclaim seeking a declaratory judgment that (a) the loan agreement and promissory note are valid and enforceable, (b) the bonds did not need to be submitted to the AG for review and approval, and (c) the City and River Creek lawfully entered the interlocal agreement. It prayed for its attorney's fees and costs. *See id.* § 37.009. Preston Hollow later filed a motion seeking summary judgment on its counterclaim and on appellants' claim for declaratory judgment. Preston Hollow based its motion on the following grounds: (1) the loan agreement meets all the common-law requirements of a valid contract, and appellants do not contest its validity; (2) the promissory note meets all the requirements of a valid contract, and it did not need to be submitted for AG approval because it is non-negotiable and thus not a public security; (3) even if the promissory note was required to be submitted to the AG for approval, any failure to do so does not render it invalid because the applicable statute does not provide consequences for such failure; and (4) the interlocal agreement is valid and enforceable, specifically its provisions providing for the City's payment to River Creek of the amounts River Creek incurred in the issuance of its indebtedness (i.e., the promissory note) to PFA, including its financing costs.

On October 4, 2021, the trial court rendered an order granting Preston Hollow's motion for summary judgment. The order awarded Preston Hollow judgment on all claims pending in the lawsuit, dismissed with prejudice appellants' live petition and application for

---

[1] These requested declarations appear in appellants' first amended (live) petition. In their original petition, the requested declarations were phrased as questions rather than as declarations, such as, "Whether the bonds were issued in strict compliance with the PID Act and applicable state law."

permanent injunction as to claims against Preston Hollow, and awarded reasonable attorney's fees and costs to Preston Hollow in an amount to be determined later. In the order the court also entered the following declarations: (1) the loan agreement is valid and enforceable; (2) the promissory note is valid and enforceable; (3) the bonds issued by PFA did not need to be submitted to the AG for approval; and (4) the City and River Creek lawfully entered into the interlocal agreement, including its provisions requiring the City to make payments from its levied assessments to River Creek to secure River Creek's issuance of indebtedness to finance the improvements.

Thereafter, appellants and the remaining appellees filed an agreed motion for summary judgment requesting the court to sign a proposed order granting the remaining appellees summary judgment, representing that the proposed order "applies the same reasoning and is based on the same summary judgment evidence and argument as the" court's order granting Preston Hollow's motion for summary judgment. The parties agreed and stipulated that the agreed motion was for "the limited purpose of expeditiously disposing of all claims" in the case other than the amount of attorney's fees and costs to be awarded to each appellee. After granting the agreed summary judgment, the trial court later rendered specific fee awards to each appellee after receiving separate motions and supporting evidence from each.[2] River Creek and the City timely perfected this appeal.

---

[2] The trial court rendered a fee award for each appellee in four separate orders, each titled, "Final Judgment." However, because of the one-final-judgment rule, and because interlocutory orders merge into the final judgment, we deem the latest of those four "final judgments"—the one signed December 6, 2022, and awarding U.S. Bank its fees—as the final judgment because it disposed of the last pending, remaining claim (i.e., U.S. Bank's attorney's fees) between the parties. *See Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020) ("When a trial court renders a final judgment, the court's interlocutory orders merge into the judgment and may be challenged by appealing that judgment."); *McFadin v. Broadway Coffeehouse, LLC*, 539 S.W.3d 278, 283–84 (Tex. 2018) ("If a judgment disposes of every

6

**DISCUSSION**

***Whether the transaction is void for failure to seek and obtain AG approval***

In their second and third issues, appellants argue that the "transaction documents"—the loan agreement, promissory note, interlocal agreement, and bonds—are void because they were not submitted to the AG for examination and approval, as purportedly required by Section 431.071 of the Texas Transportation Code.[3] That section provides,

(a) A *corporation* shall submit a *bond or note* authorized under Section 431.070 *and a contract supporting its issuance* to the attorney general *for examination*.

(b) If the attorney general finds that the bond or note, and any supporting contract are authorized under this chapter, the attorney general shall approve them.

(c) After approval by the attorney general, a bond, note, or contract may not be contested for any reason.

Tex. Transp. Code § 431.071 (emphases added). "Corporation" as used in this section means "a corporation organized under this chapter and includes a local government corporation," which in turn means "a corporation incorporated as provided by Subchapter D [i.e., Transportation Code §§ 431.101–.110] to act on behalf of a local government," such as River Creek. *See id.* § 431.003; *see also id.* § 431.101 ("Creation of Local Government Corporation"). It is undisputed that the issuer of the bonds—PFA—is a Wisconsin entity and was not organized under Texas law, including

---

remaining issue in a case, it does not lack finality for purposes of appeal merely because it recites that it is partial, refers to only some of the parties or claims, or lacks Mother Hubbard language."); Tex. R. Civ. P. 301 ("Only one final judgment shall be rendered in any cause except where it is otherwise specifically provided by law.").

[3] Although in their brief appellants use the term "transaction documents" to include the construction contract, in their live petition they do not challenge the construction contract or seek any declarations with respect thereto, and the trial court's final judgment does not make any declarations concerning the construction contract. We therefore do not include a discussion of the validity of that contract in our analysis.

7

Chapter 431 of the Transportation Code, and is thus not a "corporation" as defined in the applicable statutes. Therefore, the only "transaction documents" that appellants could possibly challenge under Section 431.071 are the promissory note, loan agreement, and interlocal agreement. They may not properly challenge the bonds because the bond issuer—PFA—is not a "corporation" as defined in Chapter 431 and thus, to the extent that any requirement to submit any of the "transaction documents" to the AG existed, such requirement burdened River Creek (as to the promissory note, loan agreement, and interlocal agreement) but not PFA (as to the bonds). Accordingly, the trial court's third declaration—stating that the bonds did not need to be submitted to the AG for approval—is not erroneous.

We thus consider whether the promissory note—and potentially also the loan agreement and interlocal agreement, as contracts "supporting" the promissory note's "issuance," *see* Tex. Transp. Code § 431.071(a)—falls under Section 431.071. That is, we consider whether it is included in the statute's reference to "note." Chapter 431 does not define the nouns "bond" and "note" or the verb "to issue," and we thus look to their ordinary meanings. *See Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014). The relevant, ordinary meaning of the noun "bond" is "an interest-bearing certificate of public or private indebtedness," *see Bond*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/bond (last visited Aug. 19, 2024), or—more generally—"an obligation; a promise," *see Bond*, Black's Law Dictionary (12th ed. 2024). A "note" is, in this context, "a written promise by one party (the *maker*) to pay money to another party (the *payee*) or to bearer" and is also known as a "promissory note." *See Note*, Black's Law Dictionary (12th ed. 2024); *see also Note*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/note (last visited Aug.19, 2024) (defining note as "a written promise to pay a debt" and "a government or corporate bond usually with a maturity of between two and ten

8

years"). To "issue" means, relevantly here, to "send out or distribute officially," as in to "issue stock," or to "put forth officially." *See Issue*, Black's Law Dictionary (12th ed. 2024); Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/issue (last visited Aug. 19, 2024) (defining transitive verb "to issue" as "to put forth or distribute usually officially"). Given the common, ordinary meanings of these three terms that are most applicable in the context of the statute, we conclude that a promissory note is reasonably included in Section 431.070's use of the term "note" and that the promissory note issued by River Creek to PFA falls under the statute. *See* Tex. Transp. Code § 431.070. We thus turn to the question of whether the validity of the promissory note hinges on the AG's approval of it.

Section 431.171(a) mandates that a corporation submit a "bond or note authorized by Section 431.070" to the AG for examination. *Id.* § 431.071(a). Section 431.070, in turn, provides,

(a) A corporation may issue bonds and notes *to carry out its purpose.*

(b) The bonds and notes may be issued under any power or authority available to the corporation, including Chapter 1201, Government Code.

(c) A bond or note must state on its face that it is not an obligation of the State of Texas.

*Id.* § 431.070 (emphasis added). Thus, a "bond or note authorized by Section 431.070" is one that a corporation issues "to carry out its purpose." *See id.* § 431.070(a). In other words, if a bond or note carries out the corporation's purpose, it is authorized under the chapter; if it does not carry out the corporation's purpose, it is not authorized.[4] *See id.* A corporation's limited purpose is "the

---

[4] A corporation is already authorized to issue bonds and notes under other applicable law, including the Business Organizations Code and, where applicable, Chapter 1201 of the

9

promotion and development of public transportation facilities and systems." *See id.* § 431.021. Chapter 431 is to be "liberally construed" to give effect to the purposes of the chapter, which include, unsurprisingly, the same very purpose of a corporation: "the promotion and development of transportation facilities and systems that are public, not private, in nature." *Id.* § 431.002(a)(5), (b). Appellants do not contend that the promissory note does not carry out River Creek's purpose; instead, they argue that the note is void because River Creek did not submit it to the AG for examination and the AG did not approve it. Appellees respond that the failure to seek and obtain AG approval does not invalidate the promissory note because the statute does not provide such consequence—or even *any* consequence—for failure to obtain AG approval.

The statute provides that a corporation "shall submit" a bond or note "authorized under Section 431.070" to the AG "for examination," *see id.* § 431.071(a), and that the AG "shall approve" the bond or note if he "finds" that the instrument is "authorized under" Chapter 431, *see id.* (b). We have already determined that bonds and notes issued "to carry out [a corporation's] purpose" are authorized under Chapter 431. *See id.* § 431.070(a). Thus, the sole criterion for AG approval under Chapter 431 is whether a bond or note is "authorized" by the chapter; that is, the AG is to determine whether a bond or note's issuance would carry out the corporation's purpose,

---

Government Code. *See* Tex. Transp. Code § 431.006 (providing that "Texas Non-Profit Corporation Act," now codified in Texas Business Organizations Code, applies to corporations "to the extent that" its provisions "are not inconsistent with" Chapter 431); Tex. Bus. Orgs. Code § 2.101 (granting nonprofit corporation power to "issue notes, bonds, or other obligations"); Tex. Gov't Code § 1201.002 (including nonprofit corporation acting on behalf of local government in definition of "issuer" and defining "public security" as bond or note authorized to be issued by issuer under "a statute, municipal home-rule charter, or the constitution of this state"). Thus, the authorization in Section 431.070 to issue bonds and notes provides a *limit* on a corporation's otherwise broad powers conferred by those other laws: the bonds and notes must be issued to "carry out" the corporation's purpose. *See* Tex. Transp. Code § 431.070(a). Without that limitation, Section 431.070(a)'s grant of the power to issue bonds and notes would be redundant to that provided by other law.

10

bearing in mind that such adjudication should be broadly conferred in *favor* of approval. *See id.* § 431.002(b).

Section 431.071 provides no consequence for failure to submit a bond or note to the AG for examination, much less for failure thereafter to obtain AG approval, and it does not condition the validity or enforceability of the subject instruments on AG approval. Instead, it mandates only that the bond or note be submitted to the AG "for examination" and then provides a defense that an issuer may employ if it has sought and obtained AG approval: the bond or note may not be contested "for any reason."[5] *See id.* § 431.071(c). Appellants argue that even though the statute provides no consequence for failure to obtain AG approval, such failure nonetheless makes the note and contracts supporting it void and unenforceable. We disagree.

In other statutes, the legislature has either provided explicit consequences for the failure to obtain AG approval or has expressly specified that an action is valid and binding *only if* AG approval is obtained; and in at least one instance, the legislature has provided a review process for the denial of AG approval. *See, e.g.*, Tex. Gov't Code §§ 1202.003 (providing that before issuance of public security, issuer "shall submit" it to AG "for approval" and that issuance except in compliance with chapter is prohibited), 1371.059 (providing that public security authorized by chapter "is not valid, binding, or enforceable unless the obligation is approved by the" AG), 2254.1038 (providing that "[b]efore a contingent fee contract for legal services . . . is effective and enforceable, the political subdivision must receive attorney general approval of the contract"

---

[5] It follows from the phrase "for any reason" that AG approval would preempt attacks such as those made by River Creek and the City in their fourth through sixth issues concerning the validity of the interlocal agreement, assuming that the agreement is a "contract supporting the issuance" of the promissory note, even though the attack is based on the PID Act rather than on whether the agreement carries out River Creek's purpose.

11

and granting political subdivision right to request contested-case hearing to review AG's refusal to approve contract), .110 (providing that contingent-fee contract entered into in violation of subchapter is "void as against public policy"); Tex. Educ. Code § 130.123(g) (providing that revenue bonds issued thereunder shall be submitted to AG "for approval," after which they "shall be valid and binding obligations . . . for all purposes").

Unlike in those statutes, Section 431.071 notably provides no consequence for failure to seek and obtain AG approval, and it does not condition the enforceability of covered instruments on AG approval. Instead, it mandates submission of the subject instruments to the AG "for examination." *See* Tex. Transp. Code § 431.071(a). It then mandates that the AG "shall approve" the instruments upon determining that they are "authorized" under Chapter 471 (that is, that the instruments will "carry out" the corporation's purpose). *See id.* § 431.071(b). Finally, it provides a statutory defense *if* AG approval has been obtained: "After approval by the attorney general, a bond, note, or contract may not be contested for any reason." *Id.* § 431.071(b), (c). It follows from this plain language that a corporation loses the potential benefit of a statutory defense if it does not seek and obtain AG approval, but loss of that defense does not—absent express statutory language to the contrary—convert the instrument into an illegal or void bond, note, or supporting contract. The legislature could have drafted this statute to provide for that consequence, as it has in other statutes, but it did not. Furthermore, the statute provides no remedy for a corporation that believes the AG has wrongfully refused approval of a bond or note.

We conclude that the legislature's silence on the consequences of failure to obtain AG approval, its failure to expressly condition the validity and enforceability of a Section 431.070 bond or note on AG approval, and its express requirement that a corporation merely "submit" the subject instrument "for examination" (as opposed to, e.g., "obtain AG approval") are dispositive

12

and support the trial court's challenged first and second declarations. *See Liberty Mut. Ins. v. Adcock*, 412 S.W.3d 492, 497 (Tex. 2013) (noting that when legislature expresses intent regarding subject in one setting but remains silent on subject matter in another, courts will generally construe statute under cannon that such silence is intentional). We overrule appellants' second and third issues.

***Whether the interlocal agreement complies with the PID Act***

In their fourth, fifth, and sixth issues, appellants contend that the trial court erred in granting summary judgment because the interlocal agreement is void for failing to comply with the PID Act because the act does not allow for PFA—a non-Texas entity—to recoup its "costs of issuance" of the bonds.[6] Their argument turns on their contention that Sections 372.023(d)(3) and 372.024 of the PID Act apply to the facts here. *See* Tex. Loc. Gov't Code §§ 372.023, .024. We conclude that they do not.

Section 372.023 specifies permissible methods by which a municipality may pay for the costs of improvements that are provided to it by dedication, conveyance (as here), or lease. *See id.* § 372.023(a). When, as here, those costs are payable from a special assessment that is payable in installments, one of the permissible methods of cost payment is through an installment sales contract between the municipality and the person who acquires, installs, or constructs the

---

[6] Appellants contend in these issues that the loan agreement and promissory note are also void under the PID Act, but they neither challenged the validity of those two documents under the PID Act in their response to the summary-judgment motion, *cf.* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal."), nor sought such declaration in their live petition. In any event, none of the provisions of the PID Act address loan agreements and promissory notes between local government corporations and third parties (such as PFA, here), and thus to the extent that appellants challenge those documents as to the PID Act, we overrule those issues.

improvements (here, River Creek). *See id.* (d)(1). That payment method is the method expressly specified by the interlocal agreement: "The City shall pay to [River Creek] the Purchase Price in Installment Payments, as provided herein."

However, as appellants correctly point out, another permissible cost-payment method—and the one on which their argument relies—is "by the issuance and sale of bonds under Section 372.024." *See id.* (d)(3). Section 372.024, in turn, provides that "[g]eneral obligation bonds issued to pay costs under Section 372.023(d) must be issued under the provisions of Subtitles A and C, Title 9, Government Code," *id.* § 372.024, which subtitles comprise the Public Security Procedures Act. *See generally* Tex. Gov't Code §§ 1201.001–1208.003, 1251.001–1253.042. Appellants contend that because PFA issued the bonds, the bonds were not issued in compliance with Section 372.024 or the Public Security Procedures Act because only statutorily defined "issuers" such as agencies, municipal corporations, and subdivisions "of this state" may issue the bonds. *See id.* § 1201.002(1). Their argument concludes: because PFA is not an "issuer" "of this state," the bonds it issued did not comply with Section 372.023, and thus subsection (h)'s allowance for the inclusion in the City's assessments of "costs incurred in connection with the issuance of bonds under Section 372.024" does not allow River Creek to recoup PFA's costs of bond issuance. *See* Tex. Loc. Gov't Code § 372.023(h) ("The costs of any improvement [for which a municipality agrees to pay] include . . . all costs incurred in connection with the issuance of bonds under Section 372.024 and may be included in the assessments."). The fatal flaw, however, in appellants' argument is that *no bonds were issued under Section 372.024* to fund *the City's* payment of its costs to acquire the improvements from River Creek; rather, PFA issued bonds to fund *its* loan to River Creek. Accordingly, Section 372.023 does not apply, and the interlocal agreement does not therefore violate that section of the PID Act.

Furthermore, as appellees respond, Section 372.026(f) of the PID Act expressly authorizes an interlocal agreement, such as that here, that

> provides for *payment of amounts* pledged [by a municipality] under this section *to the* [local government] *corporation to secure indebtedness issued by the corporation* to finance an improvement project, including indebtedness to pay capitalized interest and a reserve fund permitted by this subchapter for revenue or general obligation bonds issued under this subchapter and indebtedness issued [by the corporation] to pay the corporation's costs of issuance.

*See id.* § 372.026(f) (emphases added); *see also id.* § 372.026(b) (authorizing governing body of municipality to pledge, as payment of obligations under installment sales contract, "all or part of the income from improvements financed under this subchapter, including income received in installment payments under Section 372.023"). The interlocal agreement is indisputably an "installment sales contract," which is specifically authorized by the PID Act. *See id.* §§ 372.023(d) ("Costs payable from a special assessment that is payable in installments may be paid by any combination of the following methods: (1) under an installment sales contract or a reimbursement agreement between the municipality or county and the person who acquires, installs, or constructs the improvements . . . ."), .026(a) ("In this section, 'obligation' means bonds, temporary notes, time warrants, or an obligation under an installment sale contract or reimbursement agreement."); *see also id.* § 372.017(b) ("The governing body may provide that the assessments be paid in periodic installments, at an interest rate and for a period approved by the governing body.").

Thus, Section 372.026(f) expressly permits a municipality to execute an interlocal agreement by which it pledges its receipt of assessments as installment payments to be made to a corporation to secure the corporation's indebtedness that it issued to finance the improvements. Such arrangement is exactly what the interlocal agreement, along with the promissory note and loan agreement, demonstrate: that River Creek issued indebtedness to PFA to finance the

15

improvements, which it will sell to the City by way of periodic installment payments, funded by the City's levying of assessments on property in the PID, which will enable River Creek to pay off its indebtedness to PFA. Moreover, the trial court's fourth declaration directly tracks the language in Section 372.026(f) by stating,

> The City . . . and River Creek . . . lawfully entered into the Interlocal Agreement . . . that provides for payment to River Creek . . . of assessments levied by the City . . . against property in the [PID] to secure indebtedness issued by River Creek . . . to finance the improvement project, including indebtedness issued to pay River Creek['s] . . . costs of issuance.

*See* Tex. Loc. Gov't Code § 372.026(f). Thus, the "indebtedness" that River Creek issued to PFA via the promissory note and loan agreement—including any "costs of issuance," such as transaction-financing costs or bond-issuance fees, that River Creek undertook as part of that indebtedness—falls under Section 372.026(f), and River Creek is entitled to recoupment of such costs through the interlocal agreement. *See id.* The term "indebtedness" is undefined in Chapter 372 but under common parlance would include any amounts River Creek promised to pay PFA under the promissory note and loan agreement. *See Indebtedness*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/indebtedness (last visited Aug. 19, 2024) (defining "indebtedness," relevantly, as "something (such as an amount of money) that is owed"); *Indebtedness*, Black's Law Dictionary (12th ed. 2024) (defining "indebtedness" as "something owed; a debt"); *see also* Tex. Att'y Gen. Op. No. KP-0366 (2021) ("[A] court would have a basis by which to decide that subsection 372.026(f) could include a promissory note and thus constitute a 'cost of issuance' for which improvement district assessments may be pledged by a city.").

Furthermore, we conclude that appellants' argument that the interlocal agreement is void because the agreement "provides for PFA to recover its costs of issuance [of the bonds], in

violation of the PID Act" is inapposite. They identify only one instance—in the *loan agreement*, not the interlocal agreement—in which the term "costs of issuance" appears. That instance is in the loan agreement's definition section, defining "costs of issuance" as the costs and expenses incurred by both PFA and River Creek with respect to the corporation documents, bonds, and related documentation. But appellants identify no instances in the interlocal agreement—the only at-issue agreement to which Chapter 372 applies—employing that term or, much less, providing that *PFA* may recover its "costs of issuance" from the City's assessments, and we have found no such instances.

We hold that Section 372.026 expressly authorizes the interlocal agreement to require the City to make payments from its assessments to River Creek to secure its costs of issuing debt to PFA and thus that the interlocal agreement is not void as appellants contend. The trial court did not err in making its fourth challenged declaration, and we accordingly overrule appellants' fourth through sixth issues.

### Evidentiary issue

In their seventh issue, appellants contend that the trial court abused its discretion in overruling their objections—based on hearsay and legal conclusions—to some of appellees' evidence. The challenged evidence consisted of letters that appellants' prior attorneys—at McGinnis Lochridge—had written opining about the propriety and validity of the transactions and documents at issue. Although the record contains no explicit ruling on the objections, appellants contend that the trial court "implicitly" overruled them by rendering a final judgment reciting that it was, in part, "based on the evidence presented on [appellees'] Motion for Summary Judgment." They further argue that no ruling was required with respect to their objection that the letters contain improper legal conclusions because such objections—asserting a defect in substance—may be

17

raised for the first time on appeal. *See Grace Interest, LLC v. Wallis State Bank*, 431 S.W.3d 110, 125 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

With respect to appellants' hearsay objection—an objection to the form of the evidence, *see id.* at 124—we conclude that they failed to preserve the issue for review because the record contains no ruling—express or implicit—by the trial court. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (holding that summary judgment's recital that court considered "all competent summary judgment evidence" did not "serve[] as a clearly implied ruling by the trial court" on party's evidentiary objections); *Wilson v. Thomason Funeral Home, Inc.*, No. 03-02-00774-CV, 2003 WL 21706065, at *5 (Tex. App.—Austin July 24, 2003, no pet.) (mem. op.) (holding that recital in order granting summary judgment that trial court considered "all" evidence did not constitute implicit ruling on objection to summary-judgment evidence and that party thus failed to preserve complaint); *see also SSP Partners v. Gladstrong Inv. (USA) Corp.*, 169 S.W.3d 27, 34 (Tex. App.—Corpus Christi–Edinburg 2005) (holding that for there to be implicit ruling on objection to summary-judgment evidence, "some indication must appear in the record or in the summary judgment itself, other than the mere granting of summary judgment, that the trial court ruled on the objection"), *aff'd* 275 S.W.3d 444 (Tex. 2008).

As for appellants' objection to the attorney letters as containing improper legal conclusions—even assuming without deciding that the letters (or portions thereof) were inadmissible on that basis and thus that the trial court erred in admitting them—we may not reverse the judgment based on such error unless we conclude that the error probably caused rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a) (harmless-error rule); *Roper v. CitiMortgage, Inc.*, No. 03-11-00887-CV, 2013 WL 6465637, at *13 (Tex. App.—Austin Nov. 27, 2013, pet. denied) (mem. op.) (concluding that admission of conclusory portions of affidavit was not harmful

18

error because trial court could have determined dispositive legal issue—whether party was lawful owner and holder of instruments—by reference to instruments themselves without relying on at-issue statements). A ruling erroneously admitting or excluding evidence is generally not harmful unless the evidence is controlling on a material issue. *See Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). Appellants have not demonstrated how they were harmed by the admission of the letters. Furthermore, we cannot conclude that the letters' admission probably caused the rendition of an improper judgment because the judgment was premised entirely on *questions of law*, which we have already held the trial court properly determined on the basis of the applicable statutes, without the necessity of reliance on the subject evidence. *See Roper*, 2013 WL 6465637, at *13; *see also Texas State Univ. v. Guillen*, No. 03-23-00333-CV, 2024 WL 39819, at *9 (Tex. App.—Austin Jan. 4, 2024, pet. denied) (declining to address complaint that trial court overruled objection to legal conclusions in affidavits because such evidence was not necessary to Court's dispositive determinations and thus admission of evidence, even if erroneous, was harmless). In other words, the opinions of appellants' prior attorneys about whether the subject transactions complied with applicable laws are not controlling to the trial court's legal determination of such issue. We overrule appellants' seventh issue.

### Attorney's fees

In their final issue, appellants contend that the trial court abused its discretion in awarding attorney's fees to appellees because the fees were not "equitable and just." *See* Tex. Civ. Prac. & Rem. Code § 37.009 (providing that court "may award costs and reasonable and necessary attorney's fees as are equitable and just" in any UDJA proceeding). The UDJA "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that

19

fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). The determination of whether an award of attorney's fees would be equitable and just is not susceptible to direct proof but instead is a matter of fairness in light of all the circumstances. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 162–63 (Tex. 2004). To find an abuse of discretion, we must conclude that the trial court ruled arbitrarily, unreasonably, or without reference to any guiding principles or ruled without any supporting evidence. *See Bocquet*, 972 S.W.2d at 21.

The trial court's decision whether to award attorney's fees in a UDJA case depends on the court's conclusion whether it is just and equitable to do so under all the circumstances of the case, not on the quantum of proof as to the amount incurred or the reasonableness and necessity of such fees. *In re Estate of Kuykendall*, 206 S.W.3d 766, 772 (Tex. App.—Texarkana 2006, no pet.). The trial court was aware of the circumstances of the case, including the history of the proceedings and the fact that River Creek and the City entered into the very contracts and transactions about which they later complained after undergoing a change in leadership and encountering financial distress. After putting on evidence about the reasonableness and necessity of attorney's fees, appellees were not required to put on separate, distinct evidence on the question of law as to whether an award of fees was also equitable and just. *Carpenter v. Carpenter*, No. 02-10-00243-CV, 2011 WL 5118802, at *6 (Tex. App.—Fort Worth Oct. 27, 2011, pet. denied) (mem. op.). Considering the record and circumstances here, and for the reasons stated in our analysis of the other issues, we cannot conclude that the trial court abused its discretion by

determining that an award of attorney's fees to appellees was equitable and just. We overrule appellants' eighth issue.[7]

## CONCLUSION

Having overruled appellants' issues, we affirm the trial court's final judgment.

_____

Thomas J. Baker, Justice

Before Justices Baker, Triana, and Smith

Affirmed

Filed: August 22, 2024

---

[7] We need not reach appellants' first issue, in which they challenge the ground raised in appellees' summary-judgment motions that appellants' case does not present a justiciable case or controversy, because we have determined that the other grounds on which appellees moved for summary judgment are meritorious and support the trial court's judgment. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) (when trial court does not specify ground for its ruling, court of appeals must affirm summary judgment if any ground asserted by movant is meritorious); Tex. R. App. P. 47.1, .4. In any event, we note that appellees do not seek affirmance of the judgment on that ground raised and further concede that such challenge was mooted by appellants' amended pleading.